Grace Burnham (Campbell) CURL,
Plaintiff-Appellant,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant-Appellee,

Gerald H. Cohen, Intervenor.

No. 74–3003.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1975.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1975.

Grace Burnham Campbell Curl, pro se.

Malcolm Maclean, Charles A. Edwards, Arnold C. Young, Savannah, Ga., for defendant-appellee.

Edward T. Brennan, Savannah, Ga., for intervenor.

Before COLEMAN, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The plaintiff-appellant, Grace Curl, developed some ideas for improving typewriters. Her package of ideas, which she calls "New Concepts in Typing" (NCIT), is primarily concerned with the addition of scales to facilitate the secretary-typist's arrangement of material on a page for a more professional, neater appearance.[1] In January 1965, through her attorney, she submitted her ideas, which were not patented, to International Business Machines Corporation (IBM) on a standard form provided by IBM for the submission of ideas. It was understood by all that if IBM used her ideas, she would be compensated. In March 1965, IBM replied that it did not wish to acquire Mrs. Curl's ideas because "the scales suggested were either too difficult for the typist and secretary to comprehend, or were not new or novel to us."

In this action, Mrs. Curl alleges that IBM nevertheless did appropriate and use her ideas on several of its models, most particularly in developing its Selectric Composer typewriter, a sophisticated typewriter designed for use in the graphic arts industry and which semi-automatically justifies margins. After extended litigation in the district court, summary judgment for IBM was granted. The district court found that there were no issues of material fact and that IBM was entitled to summary judgment as to all three elements necessary for Mrs. Curl's case: novelty of the idea, communication in confidentiality to the defendant, and use of the idea by the defendant for its own benefit.

In contesting the award of summary judgment, Mrs. Curl's principal contention is that certain of the affidavits and exhibits filed in support of IBM's motion for summary judgment are "false, contrived, manufactured, perjured." In particular she attacks a photograph of a working model of a Selectric Composer, purportedly taken in the fall of 1964, before IBM received her NCIT. In addition, she argues that an early conceptual sketch of a justification mechanism, dated June 17, 1963 on its face, was actually made much later because it has a 1965 date stamped on its back. While these are the two items on which she has focused in her appeal, she attacked virtually every piece of IBM's evidence in her briefs and her own affidavits filed in the district court.

The bulk of IBM's motion for summary judgment and of the affidavits, depositions, photographs and other exhibits in support thereof was devoted to establishing that the design for the Selectric Composer was essentially complete before Mrs. Curl submitted NCIT to it. IBM's showing to this effect was well documented and persuasive. It was more than sufficient to pierce the allegations of Mrs. Curl's complaint. "[W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal controversy exists . . . .." *Bruce Construction Corp. v. United States,* 242 F.2d 873, 875 (5th Cir. 1957).

In her response to IBM's motion for summary judgment, Mrs. Curl has done nothing more than to stand on the original allegations in her complaint, albeit in a verbose manner, and attempt to create a factual issue as to IBM's credibility. Her responsive pleadings include five affidavits by her with numerous exhibits attached. The exhibits consist of copies of patent documents, IBM manuals, photocopied magazine articles, and copies of some of the exhibits earlier filed by IBM. Her premise seems to be that since IBM did not patent or market the Selectric Composer until some time after it received NCIT, it must have been deceiving the court when it filed docu-

---

1. The essence of her package of ideas is a series of vertical and horizontal scales and a "sliding centering scale." The purpose of using these scales is to produce a typed work with perfectly straight margins in any format desired. This process is called "margin justification."

ments showing that it was engaged in developing the Composer earlier.

We have carefully examined all of the evidence and have attempted to sift through all of Mrs. Curl's allegations of inconsistencies and contradictions. They are too numerous for separate treatment here. We merely note that they do not raise a serious issue of fact as to IBM's credibility. Mrs. Curl's affidavits are conclusory in nature, and her "proof" is the thinnest circumstantial evidence imaginable. Although her zealousness and earnestness are not to be denied, her arguments only skirt the fringes of IBM's voluminous proof and fail to refute or discredit its substance.

> [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, "Credibility," and have a trial on the hope that a jury may disbelieve factually uncontested proof. *Rinieri v. Scanlon,* 254 F.Supp. 469, 474 (S.D.N.Y.1966).

*Accord, Schoenbaum v. Firstbrook,* 268 F.Supp. 385, 391 (S.D.N.Y.1967), *aff'd in part, rev'd in part on other grounds,* 405 F.2d 215 (2d Cir. 1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219; *Topp-Cola Co. v. Coca-Cola Co.,* 185 F.Supp. 700, 708 (S.D.N.Y.1960).

■ Mrs. Curl also alleges as error the district judge's failure to recuse himself pursuant to her affidavit of personal bias under 28 U.S.C. § 144. The affidavit was legally insufficient to support the belief that the district judge was biased against Mrs. Curl. The only facts alleged as a basis for the belief related solely to the judge's conduct of the case, particularly his failure to promptly deny the motion for summary judgment when, as alleged, the merits unquestionably dictated denial. "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some ba-

sis other than what the judge learned from participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The district judge was correct in refusing to recuse himself.

The judgment is affirmed.