Vera JONES, Executrix of the Estate of James Jones, Plaintiff–Appellee,

and

James Jones, Plaintiff,

v.

OWENS-CORNING FIBERGLAS CORPORATION, a Delaware Corporation, Defendant–Appellant,

and

AMCHEM PRODUCTS, INCORPORATED; Armstrong World Industries, Incorporated, formerly known as Armstrong Cork Company; Carey Canada, Incorporated; The Celotex Corporation, Individually and as successor-in-interest of Philip Carey Manufacturing Company, Philip Carey Corporation, Panacon Corporation, Glen Alden Corporation, Rapid American Corporation, Briggs Manufacturing Company, and Smith and Kanzler, a Delaware Corporation; Eagle–

Picher Industries, Incorporated, an Ohio Corporation; Fibreboard Corporation, Pabco Industrial Products Division, a Delaware Corporation; Flexitallic Gasket Company, Incorporated, a Connecticut Corporation; Gaf Corporation, a Delaware Corporation; Garlock, Incorporated, Precision Seal Division, an Ohio Corporation; A.P. Greene Refractories Company; Keene Corporation, Individually and as successor-in-interest to Keene Building Products Corporation, Keene Insulation Products Corporation, Ehret Magnesia Manufacturing Company, Baldwin–Ehret–Hill, Incorporated, Baldwin–Hill Company, and Mundet Cork Corporation, a New York Corporation; National Gypsum Company, a Delaware Corporation; Owens–Illinois, Incorporated, an Ohio Corporation; Pittsburgh-Corning Corporation, Individually and as successor-in-interest to Union Asbestos and Rubber Company (UNARCO), a Pennsylvania Corporation; H.K. Porter Company, Incorporated, Individually and as successor-in-interest to Southern Asbestos, Carolina Asbestos, Thermoid and Tullman–McCluskey, a Delaware Corporation; Turner & Newall, P.L.C., Individually and as alter ego of Keasby and Mattison; General Refractories Company, Grefco; M.H. Dietrick, Defendants.

Samuel H. CULVERHOUSE; Mattie Culverhouse, Plaintiffs–Appellees,

v.

OWENS-CORNING FIBERGLAS CORPORATION, a Delaware Corporation, Defendant–Appellant,

and

Amchem Products, Incorporated; Armstrong World Industries, Incorporated, formerly known as Armstrong Cork Company; The Celotex Corporation, Individually and as successor-in-interest of Philip Carey Manufacturing Company, Philip Carey Corporation, Panacon Corporation, Glen Alden Corporation, Rapid American Corporation, Briggs Manufacturing Company, and Smith and Kanzler, a Delaware Corporation; Eagle-Picher Industries, Incorporated, an Ohio Corporation; Fibreboard Corporation, Pabco Industrial Products Division, a Delaware Corporation; Flexitallic Gasket Company, Incorporated, a Connecticut Corporation; GAF Corporation, a Delaware Corporation; Garlock, Incorporated, Precision Seal Division, an Ohio Corporation; Keene Corporation, Individually and as successor-in-interest to Keene Building Products Corporation, Keene Insulation Products Corporation, Ehret Magnesia Manufacturing Company, Baldwin–Ehret–Hill, Incorporated, Baldwin–Hill Company, and Mundet Cork Corporation, a New York Corporation; National Gypsum Company, a Delaware Corporation; Owens–Illinois, Incorporated, an Ohio Corporation; Pittsburgh–Corning Corporation, Individually and as successor-in-interest to Union Asbestos and Rubber Company (UNARCO), a Pennsylvania Corporation; H.K. Porter Company, Incorporated, Individually and as successor-in-interest to Southern Asbestos, Carolina Asbestos, Thermoid and Tullman–McCluskey, a Delaware Corporation; Turner & Newall, P.L.C., Individually and as alter ego of Keasby and Mattison; Combustion Engineering, Incorporated; Flintkote Company, a Massachusetts Corporation; W.R. Grace & Company, a Connecticut Corporation; Raytech, Successor to Raymark Industries, Incorporated, successor-in-interest to Raybestos-Manhattan, Incorporated; Rock Wool Manufacturing Company, Incorporated, an Alabama Corporation; United States Gypsum Company, Inc., Defendants,

v.

MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND, Third–Party Defendant.

Nos. 94–1861, 94–1862.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1995.

Decided Nov. 3, 1995.

North Carolina, for Appellees. **ON BRIEF:** James Boyce Pressly, Jr., Haynsworth, Marion, McKay & Guerard, L.L.P., Greenville, South Carolina, for Appellant. Michael J. Brickman, Ness, Motley, Loadholt, Richardson & Poole, Charleston, South Carolina, for Appellees.

Before WILKINSON and LUTTIG, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded for a new trial by published opinion. Judge SHEDD wrote the majority opinion, in which Judge LUTTIG joined. Judge WILKINSON wrote a dissenting opinion.

## OPINION

SHEDD, District Judge:

Owens-Corning Fiberglas Corporation ("OCF") appeals the district court's entry of partial summary judgment against it on two issues. For the reasons set forth below, we affirm in part, reverse in part, and remand for a new trial.

### I

For over two decades beginning in 1952, James Jones and Samuel Culverhouse worked at the Babcock & Wilcox ("B & W") plant in Wilmington, North Carolina. The B & W plant manufactured industrial boilers for use in large commercial facilities, and these boilers were insulated with asbestos during the 1950s, 1960s, and 1970s. Both Jones and Culverhouse, who were long-term cigarette smokers, were exposed to asbestos on a daily basis at the B & W plant, and they eventually developed asbestosis and lung cancer.

In 1990, Jones and his wife Vera, and Culverhouse and his wife Mattie, filed separate product liability lawsuits against various asbestos manufacturers, including OCF.[1] During the pretrial phase of these lawsuits,

**ARGUED:** Moffatt Grier McDonald, Haynsworth, Marion, McKay & Guerard, L.L.P., Greenville, South Carolina, for Appellant. E. Spencer Parris, Michaels, Jones, Martin & Parris Law Offices, P.A., Raleigh,

---

1. James Jones died several months after filing the lawsuit, and Vera Jones, as Executrix of his Estate, was substituted as plaintiff. Because the operative facts for purposes of this appeal involve Messrs. Jones and Culverhouse only, we will hereinafter refer to them simply as "Jones" and "Culverhouse."

all of the asbestos manufacturers except for OCF were dismissed because of settlement. The district court eventually consolidated these cases and, on motion of Jones and Culverhouse, granted partial summary judgment against OCF on two issues: (1) whether Jones and Culverhouse had been sufficiently exposed to OCF's asbestos product for purposes of rendering OCF liable and (2) whether Jones and Culverhouse could be held contributorily negligent because of their cigarette smoking. Thereafter, following a five-day trial the jury returned verdicts against OCF of $1,323,509.42 in favor of Jones and $1,333,473.65 in favor of Culverhouse. The district court subsequently denied OCF's post-trial motions and this appeal followed.

## II

■ Initially, we will address OCF's argument that the district court erred by entering partial summary judgment in favor of Jones and Culverhouse on the issue of exposure to OCF's asbestos product. This Court has previously held that the plaintiff in a personal injury asbestos case "must prove more than a casual or minimum contact with the product" containing asbestos in order to hold the manufacturer of that product liable. *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir.1986). Instead, the plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162–63.[2]

### A.

In moving for summary judgment on this issue, Jones and Culverhouse submitted to the district court the affidavits of Lowell Clark and Oliver Woodcock, both of whom testified *inter alia* that (1) they worked with Jones and Culverhouse at the B & W plant for over two decades beginning in 1952; (2) during that time, they were all exposed to,

and inhaled, asbestos dust on a daily basis; and (3) they worked with Jones and Culverhouse with and around Kaylo pipe-covering and block, which are OCF asbestos products, on a regular basis from 1952 to the 1970s. Jones and Culverhouse also submitted their own deposition testimony in which they testified *inter alia* that they were exposed to asbestos at the B & W plant and that was their only asbestos exposure. Jones and Culverhouse had previously submitted records from the B & W plant which showed that Kaylo pipe-covering and block were used there during the relevant period of time. Believing that no factual response to this evidence was necessary because a factual dispute was self-evident, *see infra* Part II–B, OCF did not submit any factual material in opposition to the motion. Presented with this record, the district court determined that Jones and Culverhouse were entitled to summary judgment.

■ We conclude that the district court properly entered summary judgment against OCF on this issue. Rule 56(c) of the Federal Rules of Civil Procedure requires the district court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The undisputed record presented to the district court—as summarized above—consists of direct evidence that establishes that Jones and Culverhouse were exposed to asbestos dust on a daily basis, and more specifically to Kaylo "on a regular basis," for approximately 20 years. This evidence clearly shows "more than a casual or minimum contact" by Jones and Culverhouse with Kaylo. The district court therefore properly ruled in favor of Jones and Culverhouse on this issue.

### B.

We reject OCF's arguments to the contrary. OCF primarily argues, as it did be-

---

**2.** Although *Lohrmann* involves Maryland law, the parties appear to agree that it is equally applicable in these cases, which are based on North Carolina law, and we have found nothing to indicate that *Lohrmann* conflicts with North Car-

olina law in this regard. *See, e.g., Wilder v. Amatex Corp.*, 314 N.C. 550, 336 S.E.2d 66, 68 (1985) ("We agree ... that at trial plaintiff's evidence must demonstrate that he was actually exposed to the alleged offending products").

low, that because neither Jones nor Culverhouse personally identified Kaylo as an asbestos product to which they were exposed, or OCF as an asbestos manufacturer whose products were in the plant, a factual dispute concerning their exposure to Kaylo exists. In making this argument, OCF cites this Court's opinion in *Roehling v. National Gypsum Company Gold Bond Building Products*, 786 F.2d 1225 (4th Cir.1986). However, *Roehling* does not support a result different from that which we have reached.

In *Roehling*, this Court *inter alia* reversed the district court's entry of summary judgment in favor of certain defendants whose asbestos-containing products were allegedly at one of the plaintiff's job-sites. With respect to that job-site, the plaintiff introduced evidence that he worked in the same limited area of the plant at the same time as his witnesses, and although the plaintiff could not remember what asbestos products were used in this area, the witnesses specifically identified two manufacturers whose products were there. 786 F.2d at 1227–28. The witnesses could not, however, testify that the plaintiff was present in this area or that he was exposed to the asbestos products. *Id.* While the defendants did not present any factual material in opposition to this evidence, they asserted that the evidence was insufficient to establish that the plaintiff was sufficiently exposed to their products for purposes of liability. *Id.* This Court disagreed, stating that this evidence "clearly raises a question of fact as to whether Roehling was exposed to defendants' products." *Id.* at 1228. For that reason, this Court reversed

the summary judgment which the district court had entered in favor of the defendants.

■ OCF argues that the evidence presented by Jones and Culverhouse is virtually identical to the evidence in *Roehling* since here, as in *Roehling*, although there is evidence which places Jones and Culverhouse in proximity with OCF's asbestos products, Jones and Culverhouse did not personally identify any OCF product to which they were exposed. OCF reasons that because this Court found in *Roehling* that this evidence "raises a question of fact," we must likewise find that a "question of fact" exists here so as to make summary judgment inappropriate. We believe that OCF misapprehends both the nature of summary judgment and the ruling in *Roehling*.[3]

In *Roehling*, this Court was presented with an appeal of an entry of summary judgment in favor of the defendants, a ruling which was premised on the district court's determination that even though the plaintiff's evidence was undisputed, that evidence was insufficient as a matter of law for the plaintiff to go forward at trial. As noted, this Court disagreed and concluded that the evidence submitted by the plaintiff was in fact sufficient to establish his case at trial. As there was no cross-motion for summary judgment by the plaintiff at issue in *Roehling*, this Court was not called upon to determine whether the evidence presented was sufficient to establish the plaintiff's case. Such a determination would have exceeded the scope of the appeal in that case.[4]

---

**3.** We note that despite the apparent similarities between *Roehling* and the cases before us, "the question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case," *First Nat'l Bk. of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577–78, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985) ("Whether summary judgment is appropriate is dependent upon the particular facts of each case"); and the evidence presented by Jones and Culverhouse differs in one significant—albeit not dispositive—respect from that presented in *Roehling*. Here, as we have already discussed, Jones and Culverhouse presented *direct* testimonial evidence which specifically places them in contact with Kaylo "on a regular

basis" for approximately 20 years. In contrast, the plaintiff in *Roehling* did not have such direct testimony but, instead, relied on circumstantial evidence to establish his case. *See* 786 F.2d at 1228.

**4.** While this Court in *Roehling* used the term "question of fact" in its ruling, a clear reading of that opinion demonstrates that no "question of fact" was actually present, and to the extent that this Court stated that a "question of fact" existed, we believe that the use of that term was imprecise and does not correctly set forth the circumstances of that case. As is clear from the *Roehling* opinion, the facts in that case were undisputed. Because of this, the district court in *Roehling* actually ruled on a question of law—*i.e.*, it ruled that the undisputed facts were insufficient as a matter of law to establish exposure.

In contrast with the facts of *Roehling*, Jones and Culverhouse successfully moved for summary judgment below to establish their exposure to OCF's asbestos-containing products, and in this appeal, OCF has placed the matter of the sufficiency of the exposure evidence on a plaintiff's summary judgment motion squarely before us. Unlike *Roehling*, we are not called upon to determine whether the evidence presented is merely sufficient to go forward to trial—*Roehling* clearly indicates that it is. Instead, our task is to determine if this evidence, which is uncontradicted, is sufficient to establish a plaintiff's case as a matter of law. As we have already discussed, we conclude that it is. Jones and Culverhouse have presented *undisputed* evidence which establishes that they were exposed to Kaylo on a regular basis for more than 20 years. Under Rule 56 and this Court's precedent on the exposure issue, Jones and Culverhouse are required to do no more.

## C.

■ We briefly address OCF's other arguments on the issue of exposure. OCF contends that a factual dispute exists because the Clark and Woodcock affidavits are essentially identical and this "raises a question about their forthrightness." OCF also asserts that the Clark and Woodcock affidavits are of "limited value" because they give no details about either the exposure the affiants seek to establish or how the affiants worked around both Jones and Culverhouse, who themselves worked in different departments. To the extent that these arguments may be seen as challenging the admissibility of these affidavits, we believe that OCF's failure to move to strike them below constitutes a waiver of these arguments. *See, e.g., Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir.1994) ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are deemed waived and a court may consider the affidavit"); *cf.*

*Kollsman, A Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 707 (4th Cir.1993) ("To preserve an issue for appeal, an objection must be timely and state the grounds on which it is based").

■ However, regardless of whether OCF has waived these arguments, we find them to be wholly without merit. Neither the fact that the affidavits are similar nor the fact that the affidavits are not more specific as to the matters specified by OCF negates their value for purposes of summary judgment in these cases. These affidavits sufficiently establish the critical facts which we have summarized above.[5] OCF may not, as it seems to suggest, " 'merely recite the incantation, "Credibility," and have a trial on the hope that a jury may disbelieve factually uncontested proof.' " *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989) (quoting *Curl v. I.B.M. Corp.*, 517 F.2d 212, 214 (5th Cir.1975)). Rule 56 clearly requires more than that. If OCF truly believes that these affiants' testimony is not credible, then it was incumbent upon OCF to depose them (or otherwise explore their testimony) during discovery and attempt to expose any inconsistencies in their testimony which could potentially cast doubt on their affidavits. OCF failed to do so and, perhaps as a consequence, these affidavits are now uncontradicted on the record before us.

## III

We now turn to OCF's argument with respect to the contributory negligence defense, in which Jones and Culverhouse asserted below that, as a matter of North Carolina law, any evidence of a failure on their part to ignore a warning concerning the hazards of cigarette smoking could not be used to establish contributory negligence in these product liability actions which involve asbestos-containing products.[6] The district

---

**5.** We find that the affidavits comply with the three requirements for affidavits under Rule 56(e)—*i.e.*, they are based on personal knowledge, they set forth such facts as would be admissible in evidence, and they show that the affiants are competent to testify about the matters stated therein.

**6.** As to the defense of contributory negligence, Jones and Culverhouse also moved for summary judgment on a separate and independent basis, arguing that there was no evidence in the record to establish that they ignored any warning on an asbestos-containing product and, therefore, they

court initially denied this motion at a pretrial hearing on May 16, 1994. *J.A.* at 276. However, on May 23, immediately prior to trial, the district court, acting *sua sponte*, reconsidered its earlier ruling and granted the motion:

> The motion for summary judgment as to this issue, contributory negligence as related to smoking, is allowed....
>
> I've read considerably more than I had last week and it seems crystal clear to me that failure to follow a warning as to one product is not a defense as to the other one and that if the testimony in the case, as I believe it will be, is that it must be that it must be there, must be testimony that exposure to the asbestosis [sic] was a substantial contributing cause to the injury or death. That it doesn't make any difference if tobacco—smoking tobacco or smoking, was also a substantial contributing factor. Doesn't make a difference. That's not contributory negligence.

*Id.* at 295.

### A.

■ We conclude that the district court erred in entering summary judgment against OCF on the defense of contributory negligence as it relates to cigarette smoking.[7] Under N.C.Gen.Stat. § 99B–4(3), a manufacturer or seller of a product may not be held liable in a product liability action if "[t]he claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant."[8] Section 99B–4(3) "reaffirms the applicability of contributory negligence as a defense in product liability actions." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504, 510 (1980); *see also Champs Conv. Stores, Inc. v. United Chem. Co.*, 329 N.C. 446, 406 S.E.2d 856, 860 (1991) (§ 99B–4(3) "merely codif[ies] the doctrine of contributory negligence as it applies in actions brought under Ch. 99B").

■ OCF argues that under § 99B–4(3), a jury could conclude that Jones and Culverhouse were contributorily negligent if it found that (1) Jones and Culverhouse "failed to exercise reasonable care under the circumstances" in their use of the asbestos-containing products because (2) they continued to smoke cigarettes after the hazards of cigarette smoking and the relationship between cigarette smoking and asbestos exposure became widely known, and (3) their smoking, combined with their exposure to asbestos-containing products, was a proximate cause of their injuries which are the subject of this litigation. While we express no opinion concerning the sufficiency of the evidence in the record to support this defense—an issue which, as we have noted, is

could not be held contributorily negligent with respect to their use of OCF's asbestos-containing products. The district court denied this aspect of the motion, and it is not now before us.

7. Although the parties devoted a considerable portion of their briefs discussing whether there is a factual basis in the record to support the district court's determination on this point, we find that this summary judgment ruling involves purely a question of law, and therefore, OCF was under no obligation at the summary judgment stage to come forward with factual material to support that aspect of its contributory negligence defense. *See, e.g., Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not"). We therefore have no occasion to review the summary judgment record to determine whether this defense is factually supported.

We also note that Jones and Culverhouse made a joint-tortfeasor argument in their motion, as-

serting that OCF could not use the contributory negligence defense based on cigarette smoking, *J.A.* at 197A; and it appears as though the district court may have based its ruling at least in part on this argument. In essence, Jones and Culverhouse asserted that because their alleged injuries may have been proximately caused by both asbestos exposure and cigarette smoking, the asbestos company and the tobacco company each may be liable for damages under a negligence theory. To whatever extent this argument was relied upon below, we reject it because, as it is used on these facts, it completely ignores the concept of contributory negligence as it exists in North Carolina.

8. This version of § 99B–4(3) is part of the North Carolina Products Liability Act that was in effect at the time the district court ruled in these cases. On July 29, 1995, the General Assembly of North Carolina amended the Products Liability Act, effective January 1, 1996, in several respects, none of which is pertinent to this appeal. *See* 1995 N.C. Sess. Laws Ch. 522.

not before us and was not before the district court—we agree with OCF that under § 99B–4(3), this type of evidence could support a finding of contributory negligence.[9] Because the district court erroneously did not permit OCF to attempt to establish this defense at trial, the judgments must be set aside and a new trial must be held.

### B.

While we would otherwise readily agree with the dissent that OCF "is not to be exonerated by the happenstance of plaintiff's health habits," under the circumstances of these cases, we cannot agree with the dissent's characterization that Jones' and Culverhouse's smoking is mere happenstance.

Under Jones' and Culverhouse's theory of the case, for which they offered medical testimony at trial, their habit of cigarette smoking operated in combination—i.e., "synergistically"[10]—with their asbestos exposure to increase dramatically their risk of getting lung cancer.[11] Moreover, under the medical evidence presented at trial by Jones and Culverhouse, the cause of their lung cancer—i.e., smoking, asbestos exposure, or both—cannot be specifically determined. Because Jones and Culverhouse therefore embrace this synergism theory, OCF should certainly be allowed the opportunity to demonstrate that Jones and Culverhouse, by smoking cigarettes in disregard of a warning which may have been given as to the danger of smoking

---

**9.** Contributory negligence is generally defined in North Carolina as " 'the breach of the duty of the plaintiff to exercise due care for his own safety in respect of the occurrence about which he complains, and if his failure to exercise due care for his own safety is one of the proximate contributing causes of his injury, it will bar recovery.' " *Champs Conv. Stores*, 406 S.E.2d at 861 (*quoting Holderfield v. Rummage Bros. Trucking Co.*, 232 N.C. 623, 61 S.E.2d 904, 906 (1950)). As we have noted, the Supreme Court of North Carolina has stated on two occasions that § 99B–4(3) is a legislative reaffirmation of the viability of contributory negligence as a defense in product liability actions. While the factual issue presented here has not been directly passed upon by any North Carolina appellate court of which we are aware, at least one North Carolina trial court has allowed the defense of contributory negligence to be asserted in circumstances identical to those which we have outlined in the text, *see Horne v. Owens–Corning Fiberglas Corp.*, 4 F.3d 276, 279 (4th Cir.1993) (noting that jury found the plaintiff contributorily negligent in asbestos case because of cigarette smoking despite knowledge of warning); and other courts have done likewise. *See, e.g., Ingram v. Acands, Inc.*, 977 F.2d 1332, 1342 (9th Cir.1992) (evidence of cigarette smoking properly admitted on issue of comparative fault where the plaintiff sought damages for total lung impairment based on synergism theory); *Champagne v. Raybestos–Manhattan, Inc.*, 212 Conn. 509, 562 A.2d 1100, 1118 (1989) (same). Indeed, neither Jones or Culverhouse, nor the dissent, have cited any federal or state court opinion which holds to the contrary.

Apart from the plain language of § 99B–4(3) and the caselaw thereunder, a simple analogy demonstrates the propriety of our reading of the statute. Suppose that a person is prescribed medication, and affixed to the medicine bottle is a warning against the use of alcohol and the medication together. Despite this warning, the person ingests the medication together with alcohol, and thereafter suffers deleterious consequences. During a product liability lawsuit between the person and the pharmaceutical company which produced the medication, the company unquestionably would be able to assert that the person's conduct constituted contributory negligence. We believe that this analogy is parallel to the situation which we have outlined in the text. As with the alcohol and medication example, the evidence in these cases shows that the asbestos and the cigarette smoke worked together—synergistically, as explained by the experts—to increase the risk of harm (*i.e.*, lung cancer) to Jones and Culverhouse. If the evidence also shows that Jones and Culverhouse were warned not to inhale asbestos and smoke cigarettes, and that they did so nevertheless, then their conduct clearly may be considered evidence of contributory negligence. A contrary holding would contravene the intent of the North Carolina legislature, as expressed in *Champs Conv. Stores* and *Smith*, and impose a standard of contributory negligence for product liability actions that differs from the general common law.

**10.** "A synergistic effect of smoking is an adverse effect that smoking has when combined with the employee's work activity. For some types of employees, smoking 'increases the probability of health impairments almost to a certainty.' When combined with smoking, exposure to asbestos ... can result in significant synergistic health effects." L.L. Frye, *"You've Come A Long Way, Smokers": North Carolina Preserves The Employee's Right To Smoke Off The Job In General Statutes Section 95–28.2*, 71 N.C.L.Rev. 1963, 1995 (1993) (citation and footnote omitted).

**11.** We note that although Jones and Culverhouse presented evidence that they had both asbestosis and lung cancer, and the contributory negligence defense appears to relate only to lung cancer, the jury did not specify the amount of damages for each disease but, instead, rendered a general verdict.

plus asbestos exposure, acted negligently so as to preclude recovery of damages for lung cancer.[12]

The dissent's statement that OCF does not claim that Jones and Culverhouse were ever warned concerning the synergistic effect of cigarette smoking and asbestos exposure begs the critical question which was left open by the district court's summary judgment ruling. In our view, OCF's only possibility of prevailing on its contributory negligence defense requires proof that Jones and Culverhouse were given such a warning. As we have noted previously, this is an issue which OCF has never been called upon to support factually because the summary judgment motion was not framed in such a manner so as to require OCF to adduce this evidence, and the district court's summary judgment ruling mooted the issue for trial purposes.

 Finally, we cannot agree with the dissent's view, which we note is supported by no citation to any authority, that § 99B–4(3)

is a "product misuse" defense that is limited in scope. As we have previously recognized, the North Carolina Supreme Court has expressly stated on two occasions that § 99B–4(3) is a codification of the doctrine of contributory negligence,[13] a doctrine which is generally more broad, and often much different, than the product misuse defense. *See, e.g., Campbell v. Robert Bosch Power Tool Corp.,* 795 F.Supp. 1093, 1097 (M.D.Ala.1992) ("the defense of product misuse is considered to be included within the broader affirmative defense of contributory negligence").[14] Our reading and application of § 99B–4(3) is based on the plain language of the *entire statute*—"[t]he claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant"— and the definitive interpretation placed thereon by the North Carolina Supreme Court, not on certain statutory language read in isolation.[15] Therefore, the statutory focus

**12.** While the dissent is correct that this Court did not reach this issue in *Horne*, it is nevertheless significant that *Horne* is the only North Carolina decision of which we are aware that has confronted the issue. The pertinent facts of *Horne*, as set forth in this Court's Opinion, show that the district court jury found, by way of special interrogatory, that Horne, who was a heavy smoker from 1952 to 1988, had been contributorily negligent because he had been made aware in the 1960s of both the Surgeon General's warning concerning cigarette smoking and research distributed by his labor union that detailed an increased risk of lung cancer for persons who smoke and are exposed to asbestos. *See* 4 F.3d at 279.

**13.** Prior to the passage of § 99B–4(3), North Carolina clearly recognized the defense of contributory negligence in product liability actions. *See, e.g., Dalrymple v. Sinkoe,* 230 N.C. 453, 53 S.E.2d 437 (1949). Interestingly, the district judge in the cases before us has recently recognized that the North Carolina Products Liability Act " 'does not extensively redefine substantive law.' " *A.T. & T. Corp. v. Medical Review of N.C., Inc.,* 876 F.Supp. 91, 93 (E.D.N.C.1995) (citation omitted); *see also North Carolina Index 4th,* Products Liability, § 17 (1993) ("Plaintiff's contributory negligence will bar his recovery in a product liability action to the same extent as in any other negligence case").

**14.** Contributory negligence is, as we discussed *supra* in note 8, the breach of the duty of the plaintiff to exercise due care for his own safety which, when established, operates as a complete

bar to a claim for negligence. Product misuse, however, "is defined as use of a product in a manner that could not reasonably be foreseen by the defendant." *Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1167 (4th Cir.1988). This Court, as well as others, have recognized that there is a distinction between these two theories. *See, e.g., Brown v. General Motors Corp.,* 355 F.2d 814, 820 (4th Cir.1966), *cert. denied,* 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967) ("Contributory negligence need not be considered ... [because] where, as here, a consumer uses a product in a manner not intended by the manufacturer and suffers an injury as a result, he may not recover because such misuse is beyond the scope of the warranty"); *General Motors Corp. v. Saint,* 646 So.2d 564, 567–68 (Ala.1994) ("the theories behind product misuse and contributory negligence [under Alabama law] are distinct from one another, rather than synonymous"); *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 495 A.2d 348, 352–57 (1985) (holding that although product misuse can defeat a claim for strict liability, contributory negligence cannot); *see generally* Annotation, *Products Liability: Product Misuse Defense,* 65 A.L.R.4th 263, §§ 2(a), 23–29 (1988) (discussing similarities and differences between theories).

**15.** We emphasize that our decision is premised on a specific application of North Carolina law, not on a broad principle of asbestos litigation. While North Carolina's retention of the contributory negligence defense as a total bar to recovery may lead to seemingly harsh results in cases such

is not, as the dissent argues, merely on Jones' and Culverhouse's "use of the product" *per se;* instead, the statute requires the focus to be on whether Jones and Culverhouse "*failed to exercise reasonable care under the circumstances* in [their] use of the product."

## IV

For the foregoing reasons, we affirm in part, reverse in part, and remand for a new trial.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.*

WILKINSON, Circuit Judge, dissenting:

I respectfully dissent. In allowing the defense of contributory negligence, the majority fails to follow the plain language of North Carolina's product liability law. The defense of contributory negligence is available only when "[t]he claimant failed to exercise reasonable care under the circumstances in his *use of the product,* and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant." N.C.Gen.Stat. § 99B–4(3) (emphasis added). There is no contention that plaintiffs misused the product here.

True, the plaintiffs smoked cigarettes. I do not understand, however, why use of one product (cigarettes) operates to bar recovery against the manufacturer of a totally different product (asbestos). The statute requires examination of the care taken in plaintiffs' *use of the product*—here asbestos—and plaintiffs' smoking is an independent fact not related to this question. The majority claims that the words "reasonable care under the circumstances" should somehow change this reading. Those words modify the phrase "use of the product," however, a point that

the majority's interpretation of the statute overlooks. If exposure to asbestos caused these plaintiffs serious harm, the defendant is not to be exonerated by the happenstance of plaintiffs' health habits.[1]

Although the majority indicates that N.C.Gen.Stat. § 99B–4(3) was intended to codify the common law of contributory negligence, the North Carolina courts have paid strict attention to the actual wording of the statute. *Champs Conv. Stores v. United Chemical,* 329 N.C. 446, 406 S.E.2d 856, 859–62 (1991). The majority's reading of these statutory terms might be less puzzling if North Carolina had enacted a statute that raised novel questions of product liability law. But various formulations of the product misuse defense are a staple of modern tort litigation, and such litigation typically involves alteration or use of the product in an arguably risky way. *See, e.g. Welge v. Planters Lifesavers Co.,* 17 F.3d 209 (7th Cir.1994) (whether use of knife to remove label from jar is misuse); *Hurt v. Coyne Cylinder Co.,* 956 F.2d 1319, 1324–25 (6th Cir.1992) (whether exposure of acetylene cylinder to open flames is misuse); *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1391–92 (10th Cir.1987) (whether locating dryer below leaking faucet is product misuse); *Beacham v. Lee–Norse,* 714 F.2d 1010, 1014–17 (10th Cir.1983) (whether elevation of roof bolter on blocks is product misuse). Conduct such as this is what the North Carolina statute contemplated as contributory negligence, and I regret to see my fine colleagues carry the statutory purpose far afield.

The majority's hypothetical of a person ingesting alcohol with prescription drugs differs from this case. Affixed to the medicine bottle in the majority's hypothetical is an explicit warning against such product misuse—a warning which defendants do not even claim was present here. Indeed, they

---

as these, it is obviously "not within our province to sit as a super-legislative body to determine whether the judgments made by the legislature were wise or desirable." *Chambers Med. Techs. of S.C., Inc. v. Bryant,* 52 F.3d 1252, 1263 (4th Cir.1995).

1. Some courts have determined that evidence of smoking in asbestos tort actions is relevant to comparative fault. *Ingram v. Acands, Inc.,* 977

F.2d 1332, 1342 (9th Cir.1992); *Fulgium v. Armstrong World Industries, Inc.,* 645 F.Supp. 761 (W.D.La.1986). These cases, however, did not involve a statute analogous to North Carolina's and thus do not provide guidance for the present case. As the majority recognizes, *Horne v. Owens–Corning Fiberglas Corp.,* 4 F.3d 276 (4th Cir. 1993), did not reach the issue before the court.

could not claim it, because plaintiffs' smoking and plaintiffs' exposure to defendant's product both predated by many years the Surgeon General's 1964 report.

Although North Carolina law does not afford a right to assert contributory negligence in these circumstances, I do not mean to imply that evidence of plaintiffs' smoking habits would routinely be withheld from a jury. A history of cigarette smoking may be relevant to the question of the proximate cause of a plaintiff's injuries, *see In re Manguno,* 961 F.2d 533 (5th Cir.1992), or perhaps to the amount of damages a plaintiff may recover, *see Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1138–40 (5th Cir.1985).[2] These questions, however, are not now before us. The jury has found that prolonged exposure to defendant's product was a substantial contributing cause of plaintiffs' lung condition, and I do not think that the company may assert a defense of contributory negligence to escape all liability.

In sum, I would affirm the judgment of the district court.

**2.** In this connection, the majority's "synergism" theory addresses a matter of causation rather than a matter of contributory negligence. However intriguing as a matter of policy, the synergism theory would include as evidence of contributory negligence conduct that is not contemplated as such by the plain wording of the North Carolina statute.