**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VALJEAN E. HAISLIP, Executrix of the
Estate of Cleo A. Elmore, deceased,
Plaintiff-Appellee,

and

THELMA C. ELMORE,
Plaintiff,

v.

OWENS-CORNING FIBERGLAS
CORPORATION,
Defendant-Appellant,

and

AC&S, INCORPORATED, a
Pennsylvania Corporation; AMCHEM
PRODUCTS, INCORPORATED;

ARMSTRONG WORLD INDUSTRIES,
INCORPORATED, formerly known as
Armstrong Cork Company;
BABCOCK & WILCOX COMPANY, a
Delaware Corporation; CAREY
CANADA, INCORPORATED; THE
CELOTEX CORPORATION, Individually
and as Successor-in-Interest to
Philip Carey Manufacturing
Company, Philip Carey Corporation,
Panacon Corporation, Glen Alden
Corporation, Rapid American
Corporation, Briggs Manufacturing
Company and Smith and Kansler, a
Delaware Corporation; COMBUSTION
ENGINEERING, INCORPORATED, a
Delaware Corporation;

No. 95-1687

CROWN CORK & SEAL COMPANY, INCORPORATED, Successor to Mundet Cork Corporation, a New York Corporation; EAGLE-PICHER INDUSTRIES, INCORPORATED, an Ohio Corporation; FIBREBOARD CORPORATION, Pabco Industrial Products Division, a Delaware Corporation; FLEXITALLIC GASKET COMPANY, INCORPORATED, a Connecticut Corporation; FLINTKOTE COMPANY, a Massachusetts Corporation; GARLOCK, INCORPORATED, PRECISION SEAL DIVISION, an Ohio Corporation; JOHN CRANE-HOUDAILLE, INCORPORATED, formerly known as Crane Packing Company; NATIONAL GYPSUM COMPANY, a Delaware Corporation; OWENS-ILLINOIS, INCORPORATED, an Ohio Corporation; PITTSBURGH-CORNING CORPORATION, Individually and as Successor-in-Interest to Union Asbestos and Rubber Company (UNARCO), a Pennsylvania Corporation; UNION CARBIDE CORPORATION, a New York Corporation; W.R. GRACE & COMPANY, a Connecticut Corporation; KEENE CORPORATION; GAF CORPORATION,
Defendants,

v.

MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND,
Third Party Defendant.

2

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-90-181-BO)

Argued: April 5, 1996

Decided: May 23, 1996

Before RUSSELL and MOTZ, Circuit Judges, and LAY,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Rebecca Anne Womeldorf, GIBSON, DUNN & CRUT-
CHER, Washington, D.C., for Appellant. John Alan Jones,
MICHAELS & JONES LAW OFFICES, P.A., Raleigh, North Caro-
lina, for Appellee. **ON BRIEF:** Larry L. Simms, GIBSON, DUNN
& CRUTCHER, Washington, D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Owens Corning Fiberglas (OCF) appeals the jury's verdict award-
ing Cleo Elmore's estate (the "estate") over $2.8 million in compensa-

tory damages upon its finding that Elmore's exposure to OCF's asbestos-containing pipe covering was a substantial contributing factor to his development of mesothelioma and resulting death. OCF contends the verdict was not supported by substantial evidence and that the jury's damage award was excessive. Finding no reversible error, we affirm.

I.

Cleo Elmore was exposed to various asbestos-containing products during his thirty years of service in the United States Navy. His earliest known exposure was in 1946, and his last in 1970. OCF manufactured an asbestos-containing product called "Kaylo" from 1958 to 1972. Although Elmore, testifying by way of deposition before he died, was unable to specifically recall any exposure to OCF-Kaylo during his service with the Navy, William Leonard, a friend and co-worker did remember.

Leonard testified for the estate at trial that he and Elmore were construction workers aboard the USS Raleigh from 1962 to 1964. According to Leonard, he and Elmore endured extensive exposure to dust from asbestos products during this time, particularly pipe covering. Leonard testified that OCF-Kaylo pipe covering was used aboard the USS Raleigh. He described it as a white pipe covering that was used extensively on the ship throughout the time he and Elmore worked there.

According to Leonard, he and Elmore were responsible for checking the piping systems aboard the USS Raleigh over a nine-month period. Because the pipe covering was being cut to fit the newly-installed pipes, Leonard recounted that asbestos dust covered him and Elmore each day, especially Elmore who spent more time in close contact with the piping systems. They worked under these conditions nine hours per day, five days per week. Leonard, who was familiar with Elmore's entire Navy career, stated that Elmore was exposed to more asbestos dust during those nine months than at any other time in his career. And, while there were other brands of asbestos-containing materials on board, Leonard testified that they generated "minuscule" amounts of asbestos dust compared to that from OCF-Kaylo pipe covering.

4

To further establish Elmore's exposure to OCF-Kaylo, the estate introduced evidence in the form of invoices demonstrating that shipments totalling 22 tons of OCF-Kaylo were delivered to the shipyard where the USS Raleigh was docked during the relevant period. The estate also offered expert medical testimony from two doctors. The doctors testified that exposure to OCF-Kaylo to the degree described by Leonard, would be a substantial contributing factor to Elmore's contraction of mesothelioma (a form of lung cancer) and subsequent death.

The estate presented evidence of damages in the form of testimony concerning the extent of Elmore's pain and suffering before death, his life expectancy in the absence of contracting mesothelioma, and his wife's near total dependence on Elmore. OCF elected not to present any testimony. The jury awarded the estate over $2.8 million in compensatory damages. This appeal followed.

II.

We turn first to OCF's contention that the evidence was not sufficient to support the jury's verdict. We will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, no reasonable juror could have returned a verdict for the non-moving party. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 351 (4th Cir. 1994).

To prevail on a product liability asbestos action under North Carolina law, the estate needed to establish that OCF-Kaylo was a substantial contributing factor to Elmore's contraction of mesothelioma. See Jones v. Owens-Corning Fiberglas Corp. and Amchem Products, Inc., 69 F.3d 712, 716 (4th Cir. 1995). "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986).

We think it abundantly clear the estate satisfied its burden of proof. Leonard's testimony established that Elmore was exposed to heavy concentrations of asbestos dust from OCF-Kaylo over at least a nine-

5

month period. And, expert medical testimony confirmed that such exposure would be a substantial contributing factor to Elmore's contraction of mesothelioma.

According to OCF, however, this evidence is insufficient because the estate needed to produce more than Leonard's testimony linking Elmore to OCF-Kaylo. OCF contends Leonard's testimony was insufficient because he was a family friend and, as such, was biased in favor of Elmore. Additionally, OCF notes that Leonard did not originally remember that OCF-Kaylo was the primary asbestos-containing product aboard the USS Raleigh; rather, he only recalled it years later after seeing a picture of OCF-Kaylo, which was apparently shown to him by the estate's counsel. The prejudicial impact of Leonard's testimony was magnified, according to OCF, because the estate then bootstrapped expert medical testimony onto its case, using Leonard's questionable testimony as the basis to ask these experts hypotheticals concerning causation.

Despite its protestations to the contrary, at the heart of OCF's argument is a mere challenge to Leonard's credibility, which is not a proper subject for appellate review. Brinkley-Obu, 36 F.3d at 351 (citing Charleston Area Med. Ctr., Inc. v. Blue Cross and Blue Shield Mut. of Ohio, Inc., 6 F.3d 243, 247-48 (4th Cir. 1993)). The jury was fully informed of the nature of Leonard's relationship to Elmore and the circumstances surrounding his recollection of OCF-Kaylo as the primary asbestos-containing product aboard the USS Raleigh. It was within the sole province of the jury to accept or reject his testimony. In any event, invoices from this period corroborated Leonard's testimony in part by establishing that large shipments of OCF-Kaylo were delivered to the loading docks where the USS Raleigh was undergoing construction. A reasonable inference from this evidence, in conjunction with Leonard's testimony, is that some, if not all, of these shipments were destined for the USS Raleigh. Cf. Lohrmann, 782 F.2d at 1163 (holding that invoice evidence, standing alone, was not sufficient to establish that a particular product was a substantial contributing factor where invoices showed only the purchase of asbestos-containing product, but not when or where the product was used).

We find the estate's evidence sufficient to support the jury's verdict that OCF-Kaylo was a substantial contributing factor to Elmore's contraction of mesothelioma.

6

III.

OCF also challenges as excessive the jury's award of over $2.8 million in compensatory damages. Appellate courts will intervene to correct an excessive jury verdict "`only in the most extreme circumstances, as where the verdict is not merely excessive but "monstrous," . . . . In very few cases, however, where such a possibility was discussed has this high hurdle been surmounted.'" Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 201 (4th Cir. 1982) (quoting Simmons v. Avisco, Local 713, Textile Workers Union of America , 350 F.2d 1012, 1020 (4th Cir. 1965)), cert. denied, 460 U.S. 1102 (1983).

OCF contends the jury's verdict in the instant case meets this standard because the estate proved only about $42,000 in medical and funeral expenses and at most $500,000 in lost retirement benefits. We disagree. OCF's argument simply overlooks the other elements of damages permissible under North Carolina law and proved by the estate, such as Elmore's pain and suffering, and compensation to Elmore's wife for lost care, assistance, companionship and comfort. On these points, the estate presented evidence that Elmore was devastated when he learned he had contracted terminal cancer. He had retired from the Navy to care for his wife who was totally blind. The two did everything together; he helped her garden and fish; he cooked meals for her and travelled around the country with her.

After Elmore became severely ill, he had lung surgery which left him with a hole in his chest that spewed fluid when he coughed, and he had chemotherapy that left him physically frail. Elmore took morphine for severe pain. He was distraught and cried often. In his final days he asked to be taken off life support. Through all of this, his primary concern was the care of his wife who was almost completely dependent on him. We certainly cannot say that the jury's award was "monstrous" in light of this evidence.

IV.

We, accordingly, affirm the jury's verdict in all respects.

AFFIRMED