**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN RE: ASBESTOS LITIGATION**

| | |
|---|---|
| NATHANIAL HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. N14C-03-220 ASB |
| DEERE & CO., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

May 10, 2017

*Upon Defendant Deere & Company's*
*Motion for Summary Judgment*. **GRANTED**.

## <u>ORDER</u>

Plaintiff, Nathanial Harris' (hereinafter "Plaintiff") claims cannot survive the summary judgment criteria.[1]

Plaintiff passed away on June 24, 2015 from lung cancer. Plaintiff claims that he was occupationally exposed to Defendant Deere & Company's (hereinafter "Defendant") product when he worked as a farmer/maintenance man between 1949 and 1992 at Cobb Farm in North Carolina. Plaintiff provided his video deposition

---

[1] Super. Ct. Civ. R. 56; *Smith v. Advanced Auto Parts, Inc.*, 2013 WL 6920864, at \*3 (Del. Super. Ct. Dec. 30, 2013); *see also Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979); *Nutt v. A.C. & S., Inc.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986); *In re Asbestos Litigation (Helm)*, 2012 WL 3264925 (Del. Aug. 13, 2012).

taken on October 21, 2014, and he is the only product identification witness. While at Cobb Farm, Plaintiff stated that his job included pulling tobacco, shaking peanuts, and picking cotton. He stated that from 1949 to 1953 he did not work on vehicles or equipment, and began engine work in 1955. Plaintiff's counsel stipulated that Plaintiff's claims of asbestos exposure occurred from 1955 through 1979. Beginning in1953, and through 1979, Mr. Harris worked on tractors at Cobb Farm, including John Deere. Mr. Harris performed head gasket work on John Deere Tractors. He stated that he did this type of work on the "old models" which he recalled Cobb Farm owning about three around 1949 to 1950. He recalled the models were Model 1010, 2010, and 3010.

This type of work involved grinding the head gasket and manifold gasket off, which created dust. Mr. Harris did this type of repair once a year or sometimes every other year. He stated that the replacement parts came from the John Deere dealer. Initially Mr. Harris testified that Cobb Farm did not have any John Deere tractors until after 1979. However, Mr. Harris discussed "old model" Deere tractors during his video deposition. Mr. Harris stated that the farm bought two "used" Deere tractors to power Deere cotton pickers, and he believed the models were Model 1010, Model 2010, and Model 3010. He stated that the tractors were on the farm in 1949 when he started working there. Mr. Harris testified that he changed small clutches on the older Deere tractors and did some brake work. He

stated that brake work needed to be done every two years or longer, and the brakes came from the John Deere dealer.  Mr. Harris did not personally purchase the replacement brakes from the John Deere dealer, but Miller Cobb, the man Mr. Harris worked for, told him. Finally, Mr. Harris testified that he also did head gasket work on the old Deere tractors.  He stated that it was not very often that he did this type of work on the old tractors, and he described the gaskets as metal-clad on both the top and bottom.  Mr. Harris described how the gasket work was completed on the old tractors.  He said that the head gaskets would either just come right off or they needed to be scrapped off.  The gaskets needed to be scraped or grinded off with a soft grinder so the cylinder would not get scraped.  When asked by his counsel, Mr. Harris stated that the parts had "John Deere" printed on the parts.

Defense's main argument is that Mr. Harris affirmed, five different times, that he did not work on John Deere farm equipment until *after*1979, which is subsequently outside of the years of exposure stipulated by Plaintiff's attorney. Further, Defendant contends that there is no evidence that Mr. Harris changed the original equipment on the tractors because he did not know the maintenance history of the tractors.  Similarly, Defendant argues that Plaintiff did not present evidence of the brand of the "old" Deere tractor replacement parts aside from hearsay. Defendant provided an affidavit from Thomas Hitzhusen, a retired

engineer formerly employed by Deere.  In his affidavit, Mr. Hitzhusen stated that "there were and are companies other than John Deere who sold and sell aftermarket service parts, such as brakes, clutches, head gaskets, and other gaskets, that would fit the models of tractors described by Mr. Harris regardless of the model year of manufacture of the tractors."  On the other hand, Plaintiff submitted Deere & Company's Responses and Objections to Interrogatories from a 2003 Rhode Island case.  The response states that the company did not manufacture asbestos containing products but "purchased asbestos containing components from multiple third party suppliers and either installed them on machinery or sold them through the Deere network of independent dealers as Genuine John Deere parts."  Plaintiff also submitted a document titled "Instruction and Parts List for John Deere General Purpose Tractor" from 1940. The instructions state: "Always insist upon getting genuine John Deere parts.  Beware of bogus parts which are said to be just as good as the genuine and offered at only slightly lower prices. The use of bogus parts always costs more in the end," and "Always order parts from your John Deere Dealer."

The Court is not persuaded by Defendant's argument that Plaintiff's testimony is contradictory and thus the Court should grant its Motion for Summary Judgment.  Counsel, on the record, stipulated that the relevant time period of Plaintiff's exposure is between 1955 and 1979.  Plaintiff testified that he did not

work with John Deere tractors until after 1979, but then testified that he worked on "older" models of John Deere tractors that were on the farm around 1949 and 1950. However, viewing the facts in a light most favorable to the Plaintiff, it seems that Plaintiff clarified the inconsistency. On page 143 of the video deposition transcript the questioning is as follows:

Q: So if I understand your testimony now, you recall John Deere tractors from the farm in the '40s and '50s?

A: Yes.

Q: And so previously when you said that you hadn't encountered a John Deere tractor before 1979, that wasn't true?

A: No. The big tractor I mean.

Viewing the facts in a light most favorable to the Plaintiff, it seems that Plaintiff made a distinction between two different types of Deere tractors on the farm, the newer models after 1979 and the older models before 1979. The Court "on a motion for summary judgment is not to weigh evidence and to accept that which seems to [it] to have the greater weight. [Its] function is rather to determine whether or not there is *any* evidence supporting a favorable conclusion to the nonmoving party."[2] Because there is evidence supporting Plaintiff's claim that he worked on Deere tractors before 1979, the Court will not grant Defendant's Motion

---

[2] *Hursey Porter & Associates v. Bounds*, 1994 WL 762670, at * 6 (Del. Super. Dec. 2, 1994)(internal quotations omitted)(citing *Data General Corp. v. Digital Computer Controls Inc.,* 297 A.2d 437, 439 (Del. Super 1972)).

based on Defendant's argument that the testimony is contradictory. Any inconsistency in Mr. Harris' testimony is ripe for cross examination, and the jury may weigh the evidence.

Defendant's second argument is that it is entitled to summary judgment because Plaintiff cannot satisfy North Carolina's product identification and exposure standards. In North Carolina, a plaintiff is required to establish "actual exposure to an asbestos-containing product manufactured, sold, or distributed by the defendant."[3] Plaintiff must provide evidence demonstrating that Plaintiff was exposed to an "offending" product.[4] The exposure must be more "than a casual or minimum contact with the product containing asbestos in order to the hold the manufacturer of that product liable. Instead, the plaintiff must present 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'"[5] "Thus, in any asbestos case, a plaintiff must '(1) identify an asbestos-containing product for which a defendant is responsible, (2) prove that he has suffered damages, an (3) prove that defendant's asbestos-containing product was a substantial factor in causing his damages.'"[6] Defendant argues that Plaintiff's case is analogous to *Harris v. Ajax*

---

[3] *In re Freeman*, 2011 WL 379324 (Del. Super. Jan. 13, 2011) (citing *Wilder v. Amatex Corp.*, 336 S.E.2d at 66, 68 (N.C. 1985)).

[4] *Wilder*, 336 S.E.2d at 68.

[5] *Jones v. Owens-Corning Fiberglas Corp. & Amchem Prod., Inc.*, 69 F.3d 712, 716 (4th Cir. 1995).

[6] *Agner v. Daniel Int'l Corp.*, 2007 WL 57769, at *4 (W.D.N.C. Jan. 5, 2007).

*Boiler, Inc.*, a District Court case that applied North Carolina Law. In *Harris*, the plaintiff died from mesothelioma and claimed that he was exposed to asbestos while servicing boilers.[7] The plaintiff testified that he worked on 70 to 80 different boilers, and recalled the different brands he worked on.[8] The court ultimately found that the plaintiff did not present evidence, beyond speculation, demonstrating that the mud the plaintiff removed from the boilers contained asbestos.[9] The court noted that the plaintiff's "assertion that the boilers left their manufacturer with asbestos [was] merely conjecture."[10] Beyond the brand name, the plaintiff "could not identify the exact make and model of any American Standard, Cleaver-Brooks, or Crane boilers her repaired."[11] Additionally, there was a lack of evidence such as "repair manuals, specification sheets or engineering drawings relating to the specific type of boilers [the plaintiff] serviced. As a result, the record before the Court lack[ed] any factual basis showing [the plaintiff] repaired boilers that incorporated asbestos-containing cement when they left their respective manufacturers."[12] Further, the court held that even if it assumed the boilers contained asbestos, the plaintiff's argument had a "fatal gap" because there was a lack of evidence to determine whether the mud product in question was

---

[7] *Harris v. Ajax Boiler, Inc.*, 2014 WL 3101941, at *2 (W.D. N.C. July 7, 2014).
[8] *Id.* at *2-3.
[9] *Id.* at *4.
[10] *Id.* at *4
[11] *Harris*, 2014 WL 3101941 at *4.
[12] *Id.* at 4.

incorporated in the boiler by the manufacturer.[13]  The plaintiff had no recollection of the service history, when the boilers were initially installed, or if a boiler he worked on was previously serviced.[14]

Applying North Carolina law, the Court finds that Plaintiff failed to submit evidence that a reasonable juror, beyond speculation, could infer that the "older" tractors had parts that contained asbestos and were manufactured by Deere. Although Plaintiff submitted evidence that Deere encouraged the use of Deere replacement parts, there is no evidence in the record that the parts of the tractors Plaintiff worked on were asbestos containing products manufactured by Deere, or that the parts actually contained asbestos.  Mr. Hitzhusen confirmed that other companies sold parts that fit Deere tractors, and Plaintiffs did not submit evidence to infer that the parts Mr. Harris worked with were manufactured or sold by Deere. Like the plaintiff in *Harris*, Plaintiff did not know the maintenance history of the "older" Deere tractors, whether they were serviced before he worked on them, or if the replacement parts were Deere products beyond his boss telling him that he purchased the parts from the Deere dealer.[15]  Furthermore, there is no evidence that the Operator's Manual or the instructions and parts List provided by Plaintiff were related to the tractor models that Mr. Harris worked on. Beyond speculation, a

---

[13] *Id.*

[14] *Id.*

[15] The Court acknowledges that Plaintiff, in his deposition, said that the gaskets had the name "John Deere" on them.  However, this was not from his personal knowledge.  This was only after Plaintiff's counsel specifically asked if the writing said "John Deere."

reasonable jury could not determine that the parts Mr. Harris replaced or worked on were in fact manufactured by Deere.  For the reasons stated above, pursuant to North Carolina substantive law, Plaintiff's claims fail.

Accordingly, Defendant Deere & Company's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS SO ORDERED.**

<u>**/s/ Calvin L. Scott**</u>

**Judge Calvin L. Scott, Jr.**