**Harold FARMER, Plaintiff,**

v.

**PENNSYLVANIA RAILROAD COM-
PANY, Defendant.**

**Civ. A. No. 66–641.**

United States District Court,
W. D. Pennsylvania.

March 25, 1970.

---

Edward J. Balzarini, of Suto, Power, Balzarini & Walsh, Pittsburgh, Pa., for plaintiff.

Aloysius F. Mahler, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

The defendant has timely filed a "Motion for Judgment in Accordance with Motion for Directed Verdict and in the Alternative for a New Trial" following a jury trial and verdict for the plaintiff rendered on October 14, 1969.

■ The record in this Federal Employers' Liability Act case discloses evidence, presented by plaintiff, that defendant negligently exposed plaintiff to Varnolene mist which he breathed; that as a result of defendant's negligence plaintiff's lungs were made more susceptible to tuberculosis; and that plaintiff did in 1963 contract tuberculosis resulting in a permanent injury. Defendant's contention "that the evidence was insufficient to support a finding of any negligence on the part of the railroad which caused or contributed to plaintiff's injuries" is therefore without merit.

■ At the trial defendant moved for a directed verdict based on the three year statute of limitations, and this contention was renewed by defendant in an amendment to the motion. The evidence shows that plaintiff's tubercular condition was first diagnosed on July 17, 1963, and the plaintiff ceased working for the defendant on July 13, 1963. There was no suggestion that plaintiff should have known he had tuberculosis at any earlier date. " '* * * [T]he afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves * * *.' " Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282 (1949). See also: Fowkes v. Pennsylvania Railroad Company, 264 F.2d 397 (3d Cir.1959). The complaint was filed on May 26, 1966. Having commenced his action "within three years from the day the cause of action accrued", 45 U.S.C. § 56, plaintiff is not barred by the statute of limitations.

The defendant's motion for judgment n.o.v. must be denied.

■ After counsel had concluded their summations and prior to the court's instructions to the jury, counsel for defendant orally requested a charge that, if plaintiff's condition was caused jointly by defendant's negligence and by cigarette smoking, the jury should apportion damages between these two causes and award only those damages which were caused by defendant's negligence. Counsel excepted to the failure to so charge the jury. There was no error in refusing to charge as requested. Where a railroad's negligence causes, in *whole or in part*, an injury to its em-

ployee, it is liable for the entire amount of damages, and there is no provision for reduction of damages for innocent causes which concur with the defendant's negligence in causing an injury. 45 U.S.C. § 51. *Cf.* Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 109, 80 S. Ct. 173, 4 L.Ed.2d 142 (1959); Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Fleming v. Husted, 164 F.2d 65, 67–68 (8th Cir.1947); Restatement, Second, Torts § 433A, comment a.

The jury was instructed that the defendant would not be liable to pay money if excessive cigarette smoking caused defects or weaknesses in plaintiff's lungs which predisposed him to contract tuberculosis. The court emphasized twice that defendant should not be held responsible if the negligence of the defendant was not the cause of the tuberculosis.

The defendant assigns as error the refusal to submit the issue of contributory negligence to the jury. There was evidence that cigarette smoking was a lung irritant. Even though plaintiff's excessive cigarette smoking may have been a contributing cause of his tuberculosis, there was no affirmative evidence that by indulging in this habit the plaintiff negligently ran the risk of contracting the disease.

Although the defendant pleaded contributory negligence in its answer, it was not mentioned as an issue in its pretrial narrative statements nor in the transcript of the pretrial conference. After the testimony was closed counsel was informed of the court's opinion that there was no contributory negligence in the case; defendant's counsel agreed with the court but desired to further "reflect" on the matter (T., pp. 188–189); he made no argument on the point to the jury. The next day, just before the charge, he contended orally that contributory negligence was in the case due to plaintiff's excessive cigarette smoking and requested appropriate instructions (T., p. 215). The court, still being of the opinion that there was no

proof of contributory negligence and that the issue had been abandoned by defendant, did not comply, and the defendant excepted to the failure to so charge (T., pp. 238–239). At oral argument on the motions, defendant's counsel again conceded that contributory negligence was not in the case; and his brief on behalf of the defendant does not mention the issue. In the circumstances, we are still of the opinion that the issue of contributory negligence was not in the case.

Defendant made three motions for a mistrial: (1) The plaintiff testified that after his hospitalization for tuberculosis "he had tried to go back to work for the railroad but the railroad would not permit him to do so" (defendant's 10th reason for a new trial); (2) argument by plaintiff's counsel "(a) that Varnolene was a caustic compound; (b) that the said solvent burned plaintiff's lung tissue; (c) that defendant considered plaintiff to be nothing more than a donkey" (defendant's 11th reason for a new trial); (3) cross-examination by plaintiff of Dr. Titchworth "brought before the jury, over defendant's objection, the statement that plaintiff had been exposed to two Pennsylvania Railroad employees who had tuberculosis" (defendant's 12th reason for a new trial). The defendant contends the testimony, argument and cross-examination singly and cumulatively were prejudicial and assigns the failure to grant the motions as reasons for a new trial (cf., T., pp. 212–213).

As to the testimony of plaintiff concerning his attempt to go back to work, no objection was made; he was cross-examined on the matter; and then when defendant moved to strike the testimony, the court complied and the jury was instructed not to consider it (T., pp. 84–87).

Thereafter, as the trial developed, it appeared that the plaintiff's main item of damage was based on the contention that he could not do the heavy work of a car repairman following his recovery from tuberculosis. On this

issue it was admissible, corroborative evidence to prove that the railroad would not hire a man who could only do light work; it was not admissible in the sense, originally thought by the court, that the railroad refused to hire a former employee who had not only recovered from his illness but was fully able to resume his job as a car repairman. It was this latter proof, not mentioned in the plaintiff's pretrial narrative statement, that seemed totally irrelevant to the issue of damages that persuaded the court to strike the testimony. In our opinion, in the light of the subsequently developed issue of permanent partial disability, the challenged evidence, stricken out, did not constitute prejudicial error.

The argument by plaintiff's counsel concerning Varnolene was perhaps an overstatement, which frequently occurs in the heat of battle, but nevertheless it was founded upon the evidence adduced in the Varnolene warning label and the testimony of plaintiff's doctor that Varnolene would irritate and weaken lung tissue. It is difficult to believe that the objectionable argument so exceeded the bounds of propriety or was so unduly prejudicial in the context of the case as to require a mistrial. No motion was made immediately following the argument to instruct the jury to disregard it and no corrective instruction was requested. The next day when the motion for mistrial was made, the exact words of counsel were difficult to recall. We think they were not highly inflammatory and it was not error to refuse the motion for mistrial. *Cf.* St. Louis Southwestern Ry. Co. v. Ferguson, 182 F.2d 949, 954 (8th Cir.1950).

As to the "donkey" reference, what plaintiff's counsel actually said was:

"These fellows are donkeys. Let them go, let them work out there in all kinds of conditions and so what" (T., p. 201).

We view this as another instance of over-emphasis which could have been cured by objection made immediately following the argument.

As to the cross-examination of Dr. Titchworth, it appears that the doctor's medical opinion, as reflected in his written report, was based in part on the contacts plaintiff had with two fellow employees who were tubercular. The plaintiff's medical and work history upon which the doctor's medical opinions were based was properly a matter for exploration by cross-examination.

If there was an unfounded implication that the railroad was responsible for these tubercular contacts, it arose from the report of the defendant's doctor and cannot be attributed to plaintiff's counsel. He did not argue to the jury that these possible sources of plaintiff's tuberculosis was evidence of negligence on the part of the railroad.

It is the opinion of the court that each of the motions for mistrial was properly denied and that their subject matter considered collectively was not so prejudicial as to require a new trial.

Defendant also contends that the verdict was excessive. Plaintiff's medical expenses totalled $4,591.90. During the last four years in which plaintiff received wages, he earned an average of $6,452 per year. At the time of trial in October, 1969, he had for two years done light janitorial work two hours a day at $3.20 per day or $832.00 a year. Plaintiff's past loss of earnings for approximately 5¾ years prior to the trial was $36,267.[1] Plaintiff, being 53 years old at the time of trial, had a 12 year work-life expectancy. Based on plaintiff's earnings record, the jury would have been warranted in finding that his future earning capacity was impaired in the amount of $5,620 annually for those 12 years. The present worth of $5,620 over a 12 year period at 6% interest is $47,117.20.[2] The jury might have used

---

1. Although plaintiff stopped working on July 13, 1963, he was paid by defendant through the end of 1963.

2. Mathematical Tables from Handbook of Chemistry and Physics, 10th ed., p. 367.

a discount rate lower than 6% which would have resulted in an even larger present worth figure. Ches. & Ohio Ry. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Pennsylvania Railroad Company v. McKinley, 288 F.2d 262 (6th Cir.1961); O'Connor v. United States, 269 F.2d 578 (2d Cir.1959); Thomas v. Conemaugh Black Lick Railroad, 133 F.Supp. 533 (W.D.Pa.1955), aff'd 234 F.2d 429 (3d Cir.1956); Southern Pac. Co. v. Guthrie, 186 F.2d 926 (9th Cir.1951); Virginian Ry. Co. v. Armentrout, 166 F.2d 400 (4th Cir. 1948). In addition, the jury might have made some award for pain, suffering and inconvenience. The award of $75,-000 was not excessive in the circumstances of this case.

An appropriate order will be entered.