**Shane E. RICE, Plaintiff**

v.

**CINCINNATI, NEW ORLEANS & PACIFIC RAILWAY COMPANY, et al., Defendants/Third Party Plaintiffs,**

v.

**Edward SANDLIN, etc., Third Party Defendant.**

Civil A. No. 94–056.

United States District Court, E.D. Kentucky.

March 18, 1996.

James H. Wettermark, Van Kirk McCombs, II, Burge & Wettermark, P.C., Birmingham, AL, and Gregory T. Hughes, Burge & Wettermark, P.C., Ludlow, KY, for Plaintiff.

Robert Cetrulo, Ware, Bryson, West & Kummer, Edgewood, KY, for Defendants.

Gary J. Sergent, O'Hara, Ruberg & Taylor, Covington, KY, for Third Party Defendant Sandlin.

## OPINION AND ORDER

BERTELSMAN, Chief Judge.

This is an action under the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.* Plaintiff claims that the railroad failed to provide him with a reasonably safe workplace, causing him to incur significant injuries in a car/train collision.

This matter is before the court for a determination of the issues of apportionment, contribution or indemnity. The third-party plaintiff and the third-party defendant filed briefs on this issue in accordance with the court's January 25, 1996 order. The plaintiff did not file a brief. Also pending is defendant CNO & TP's motion in limine (doc. # 59).

Plaintiff was employed by the defendant railroad companies as an engineer-trainee. On January 29, 1993, while plaintiff was performing his duties as an engineer-trainee, the train collided with a car driven by Reba Sandlin. The force of the collision caused plaintiff to be thrown between the engineer's console and the engineer's chair, allegedly sustaining personal injuries.

Plaintiff sued the railroad and its affiliated companies under the FELA, alleging that the defendants failed to provide him with a safe place to work. Initially, plaintiff emphasized the lack of a seatbelt or other restraining device, but he has recently relied more heavily on the size of the engineer's chair in relationship to the space in which it is situated and the dangerous condition of the railroad crossing. Specifically, the plaintiff claims that the engineer's chair is so large that it is unable to swivel without hitting either the wall or the engineer's console. Therefore, the plaintiff was unable to easily enter and exit the chair. In addition, plaintiff claims that the particular crossing at issue was unusually dangerous.

Defendant CNO & TP filed a third-party claim against the estate of Reba Sandlin on the basis that it was Ms. Sandlin's negligence rather than that of CNO & TP that caused Mr. Rice's injuries. On January 25, 1996, this court ordered the parties to brief the issues of apportionment, contribution and indemnity between CNO & TP and Ms. Sandlin's estate. The plaintiff did not file a brief on these issues, but both the third-party plaintiff and the third-party defendant contend that the damages in this action must be apportioned by the jury under Kentucky law.

## ANALYSIS

*A. Apportionment, Contribution or Indemnity*

██ Under section 1 of the FELA, the railroad:

shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C.A. § 51 (1986) (emphasis added). Thus, the plain language of the statute imposes liability on the railroad for any injury resulting in whole or in part from the negligence of its officers, agents or employees. *Bailey v. Central Vermont Railway*, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943); *Mazyck v. Long Island Railroad Co.*, 896 F.Supp. 1330 (E.D.N.Y.1995).

█ As one court has stated:

FELA makes no provision for the reduction of damages recoverable by an employee against the carrier on account of the fault of any third person. Liability is thus imposed upon the carrier for all damages sustained by its employee except any part attributable to the negligence of the employee, if the injury is wholly or partly caused by the railroad's negligence.... A railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA depends entirely on state law. FELA, while not providing for contribution, does not prevent the railroad from attempting to recover its losses from a third party.

*St. Louis Southwestern Railway Co. v. Board of Commissioners of Seward County*, 716 F.Supp. 13, 14 (D.Kan.1989) (quoting *Gaulden v. Burlington Northern, Inc.*, 232 Kan. 205, 210–211, 654 P.2d 383, 389 (1982)); *see also Tersiner v. Union Pacific Railroad Co.*, 754 F.Supp. 177, 178 (D.Kan.1990) ("[U]nder FELA the common carrier must bear all of the loss sustained by its employee which is caused jointly by the fault of the carrier and third parties."), *aff'd*, 947 F.2d 954 (table) (10th Cir. Oct. 30, 1991); *Farmer v. Pennsylvania Railroad Co.*, 311 F.Supp. 1074 (W.D.Pa.1970).

█ In this case, the plaintiff initiated this FELA action against his employer. The employer then filed a third-party claim against the Sandlin estate. If the railroad is found to have negligently caused even a part of the plaintiff's injury, the plaintiff is entitled, under the FELA, to collect all damages sustained from the railroad.[1] The railroad may then, if permitted by Kentucky law, seek contribution or indemnity from the Sandlin estate.

In Kentucky, apportionment issues are generally determined in accordance with KRS 411.182.[2]

---

1. The third-party defendant and the defendant both contend that Kentucky law governs the entire issue of apportionment. Therefore, according to those parties, the damages must be apportioned pursuant to KRS 411.182 so that each party is held liable only for his proportionate share of damages. However, the cases cited in support of that contention state only that a FELA employer may seek contribution from a joint tortfeasor as permitted by state law.

2. KRS 411.182 provides:
   **Allocation of fault in tort actions—Award of damages—Effect of release.**—(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall making findings indicating:
   (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
   (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.
   (2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
   (3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
   (4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides.

All of the parties against whom the liability may be apportioned are parties to this action. CNO & TP also claims that it is entitled to indemnity from the alleged active tortfeasor, Reba Sandlin.

Thus, the issue becomes whether KRS 411.182 supersedes the common law of indemnity. Kentucky law provides no clear answer to this question. *Kevin Tucker & Assoc. v. Scott & Ritter*, 842 S.W.2d 873, 874 n. 5 (Ky.App.1992).

The parties have argued the indemnity issue on the common law basis of active or passive negligence. This approach has been rejected by the Kentucky Supreme Court in favor of a more policy oriented analysis based upon whether or not the would be indemnitee has discharged a duty to the injured party which should have been discharged by the indemnitor. *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936 (Ky.1987). Therefore, the evidence must determine whether apportionment, indemnity, or neither is appropriate.

■ It is apparent that the court can and should resolve all issues of apportionment and indemnity among the parties. The circumstances under which the third party defendant's decedent found herself stopped on the railroad track have not been elaborated upon by the parties in their memoranda. Conceivably, this could have occurred without any negligence on the part of the decedent. If there was no negligence on the part of the decedent, then the railroad would not be entitled to either indemnity or contribution from her estate. As stated in *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247 (Ky.1995), "[t]here can be no indemnity without liability."

Therefore, the parties shall present evidence as to the relative fault of the third party defendant's decedent with regard to the cause of the accident and the resulting injuries, if any, to the plaintiff. The court and/or jury will resolve the issues of apportionment and indemnity after hearing the evidence.

If the plaintiff receives any award, he will be entitled to judgment against the Railroad for the full amount of the verdict. The Railroad will be entitled to judgment against the third party defendant for the apportioned percentage or complete indemnity, as the situation requires.

The court notes that the percentages of degree of fault in causing the accident may be different than those in causing the injuries of the plaintiff, if any. The court further notes that the procedure outlined above may result in a resolution of the same issues between the plaintiff and the third party defendant as are pending in the state court action. The court clearly has supplemental jurisdiction to resolve these issues. 28 U.S.C. § 1367.

### B. Motion in Limine—Admission of Trainmen's Testimony under Federal Rules of Evidence 701 and 702

Plaintiff, in a separate motion in limine, proffers the testimony of several of his fellow trainmen that the cab of the engine in which plaintiff was riding is not properly designed and that the crossing was unsafe. Plaintiff offers the cab testimony under Fed.R.Evid. 702, relating to expert testimony and the crossing testimony under Fed.R.Evid. 701, lay opinion testimony.

■ At one time such testimony might have been admitted, but the duty of the federal trial judge to act as "gatekeeper," with regard to the admission of expert testimony is now much stronger. In the opinion of this court, a "new era"[3] in the scrutiny of expert testimony was introduced by the decision of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Although this decision was primarily concerned with the screening of scientific theories such as the propensities of drugs to cause adverse side effects, this court believes that the "gatekeeping" function discussed by

However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

3. *Cf. Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989) ("new era" summary judgment).

the Court[4] is broad enough to mandate more intensive scrutiny of expert qualifications as well.

The United States Court of Appeals for the Sixth Circuit has so stated. "The Court cautioned in [*Daubert*] that ... trial judges must ensure that scientific testimony is not only relevant but reliable." *Glaser v. Thompson Medical Co.*, 32 F.3d 969 (6th Cir.1994).

That a determination of the **reliability** of expert testimony must include scrutiny of the proffered expert's qualifications is apparent from the text of Fed.R.Evid. 702 itself:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness *qualified as an expert* by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702 (1996) (emphasis added).

As the Sixth Circuit recently observed:

This circuit has found that although *"Daubert* dealt with scientific experts, its language relative to the 'gatekeeper' function of federal judges is applicable to all expert testimony offered under Rule 702." Thus, under the Federal Rules of Evidence, " 'the trial judge must ensure that any and all ... testimony or evidence admitted is not only relevant, but reliable.' " In *Berry, [v. City of Detroit,* 25 F.3d 1342] [ (6th Cir.1994) ], an excessive force case brought under 42 U.S.C. § 1983, a law enforcement officer testified as an expert about police practices and stated that the police department's failure to discipline and train its officers not to use improper deadly force amounted to "gross negligence". *Berry,* 25 F.3d at 1353. This court found that the witness *lacked the necessary qualifications* and that counsel had laid no foundation for his "expert" testimony about "police policies and practices", including the department's alleged failure to properly discipline officers for use of excessive force. In addition, this court held that the witness's "methodology was as suspect as his conclusions" since he merely reviewed annual summary sheets documenting statistics of shooting incidents involving police officers without reviewing the underlying facts to determine whether any force used may have been justified.

*U.S. v. Thomas,* 74 F.3d 676, 681 (6th Cir. 1996) (citations omitted) (emphasis added).

The appropriate degree of stringent scrutiny was employed by the Sixth Circuit in *Cook v. American S.S. Co.,* 53 F.3d 733 (6th Cir.1995). In that case, although the expert was qualified on testing and failure analysis, the court held that it was error for the trial court to allow him to speculate that a marine rope had failed from exposure to a torch, when he had not tested the rope and his observations of char marks were no better than those of the jury. It is noteworthy that the appellate court's scrutiny was not directed at scientific theory but at the methodology of the expert and the fact that his testimony strayed outside the realm of his expertise. This indicates that the "gatekeeping" function is applicable to all aspects of expert testimony, including the qualifications of the witness. *Accord Wade–Greaux v. Whitehall Laboratories, Inc.,* 874 F.Supp. 1441, 1479 (D.V.I.1994).

■ Scrutinizing the proffered testimony of plaintiff's fellow trainmen as described in the motion in limine, it is readily apparent that they do not have the qualifications to offer expert opinion that the engine cab design is unsafe. Many factors would have to be considered beyond the size of the seat to offer such an opinion. What other ergonomic functions must the seat fulfill? If it were smaller, would this increase the engineer's fatigue or otherwise affect his or her performance? Such questions are beyond the expertise of the proffered trainmen and address themselves to an expert in ergonomics or engine design.

■ The same is true of the testimony regarding the crossing. The law does not require gates at all crossings. A balancing of many factors, including the expense involved is required. *See Bridger v. Union Railway,* 355 F.2d 382, 389 (6th Cir.1966). These trainmen, although experienced on the rail-

**4.** *Daubert,* 509 U.S. at ——, 113 S.Ct. at 2786, n. 7.

road, do not have the expertise to offer reliable testimony on crossing design. To allow them to offer educated or uneducated guesses would be misleading to the jury rather than of assistance to it. To quote the *Daubert* Court more fully:

> To the contrary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify. *"If scientific, technical, or other specialized knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue" an expert "may testify *thereto."* The subject of an expert's testimony must be "scientific ... knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation.

*Id.* at ——, 113 S.Ct. at 2795 (emphasis added). The court holds that to admit the testimony proffered in this case would be to allow just such subjective belief or unsupported speculation.

Plaintiff relies on *Young v. Illinois Central R. Co.,* 618 F.2d 332 (5th Cir.1980), to support his contention that the trainmen's testimony is admissible. This is a pre-*Daubert* decision and the remarks of the court concerning the liberal nature of the Federal Rules of Evidence went too far in light of the hindsight afforded by *Daubert.* Even so, the court held only that the trial court should have admitted lay opinion testimony as to the "general condition" of the crossing. It specifically held that expert testimony was required to assess the "danger of this particular crossing." Indeed, the court quoted a Sixth Circuit case with approval to the effect that "[i]t is absurd to contend that the average layman has, as a matter of common knowledge, a sufficient grasp of the diverse factors which must be considered in constructing and maintaining an acutely angled railroad crossing which will afford a maximum of safety and a minimum of inconve-

nience to vehicular traffic and train movement." *Young,* 618 F.2d at 338. While lay opinion might be admissible concerning the maintenance of the crossing, *e.g.,* obstruction of the view by shrubbery or the existence of potholes, expert testimony is required as to the safe *design* of the crossing, and the proffered witnesses do not have the necessary qualifications. Therefore, the proffered testimony must be excluded.

### CONCLUSION

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the issues of apportionment, contribution or indemnity will be determined as outlined above; and

2. That defendant's motion in limine (Doc. # 59) be, and it is, hereby **granted.**