George E. **THIRKILL** and wife, Mary B. Thirkill, Plaintiffs,

v.

**J.B. HUNT TRANSPORT, INC.; a corporation; Norfolk Southern Railway Company, a corporation, Defendants.**

**Civil Action No. 95–G–1201–S.**

United States District Court, N.D. Alabama, Southern Division.

Aug. 14, 1996.

Frank O. Burge, Jr., Burge & Wettermark, Birmingham, AL, for plaintiff.

Christopher S. Rodgers, Huie, Fernambucq & Stewart, Birmingham, AL, for defendant J.B. Hunt.

Crawford S. McGivaren, Jr. and Steve Alan Tucker, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, for defendant Norfolk Southern.

### MEMORANDUM OPINION

GUIN, District Judge.

At about 7:40 p.m. on Tuesday, May 25, 1993, a train/tractor trailer truck accident took place at the intersection of Lawrence County Road 270 and Norfolk Southern Railway Company's [hereinafter Norfolk] mainline track from Sheffield to Chattanooga.[1] According to plaintiff George Thirkill, a trainee engineer at the time, the train was travelling within the speed limit at a speed of approximately 43 miles per hour at the time of the accident.[2] The truck did not stop for the train crossing. Although the plaintiff put the train into emergency to stop it from colliding with the truck, the train was unable to stop prior to hitting it.

As the train approached the crossing its headlights were burning on bright, the horn was sounding, and the bell was ringing. In addition to the aforementioned safeguards the truck failed to stop for crossbucks [3] and seemingly ignored an advance warning sign for the crossing located in the crossing approach.

Suit was brought pursuant to the Federal Employers' Liability Act [hereinafter FELA] by the train engineer and his wife. Plaintiff George Thirkill has claimed injuries against both defendants for his right knee, right shoulder, and right elbow as a result of the accident. Plaintiff Mary B. Thirkill brings suit against defendant J.B. Hunt Transport, Inc. for the loss of services and companionship of her husband.

The cause is presently before the court on the motion for summary judgment filed by Norfolk on the following:

1) Any claim based upon the speed of the train at the time of the incident made the basis of the lawsuit; and

2) Any claim based upon the location of the independent brake valve.

Plaintiffs have adopted the position, as stated in "Plaintiffs' Position" of the pretrial order, that train speed contributed to Thirkill's injuries:

The public grade crossing was an unsafe place for plaintiff to operate a locomotive traveling at the speed required by the defendant railroad company. It was an unsafe place for plaintiff to operate a locomotive engine at the said speed due to the absence of stop signs for the public road as well as inadequate signalization.

The issue of train speed has been settled as a matter of law in *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), a portion of which follows:

per hour. The Alabama Uniform Traffic Accident Report indicates the truck speed to be about 40 miles per hour. Thirkill testified the truck speed was closer to 40 miles per hour.

---

**1.** The accident site is a short distance west of Courtland, Alabama, more specifically about 1,225 feet north of U.S. Highway Alternate 72 (Alabama 20).

**2.** Conductor T.R. Schell indicated on his accident report that the truck speed was 35–45 miles

**3.** Located on either side of the crossing.

On their face, the provisions of § 213.9(a)[4] address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort which respondent seeks to impose on petitioner.

. . . . .

Read against this background, § 213.9(a) should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings. ... We thus conclude that respondent's excessive speed claim cannot stand in light of the Secretary's adoption of the regulations in § 213.9.

We hold that, under the Federal Railroad Safety Act, federal regulations adopted by the Secretary of Transportation pre-empt respondent's negligence action only insofar as it asserts that petitioner's train was traveling at an excessive speed.

507 U.S. at 674–678, 113 S.Ct. at 1742–1744, 123 L.Ed.2d at 402–404.

■ Because the train was traveling within the speed restrictions set by regulation,[5] any speed claim brought by J.B. Hunt Transport or its driver would be precluded by federal law under *Easterwood.* Under 49 U.S.C.A. § 20106,[6] entitled "National uniformity of regulation," a part of FELA, Congress has established a policy of national uniformity of laws, rules, regulations, orders

and standards relating to railroad safety and the role a state may play in adopting laws in the area.[7] The same uniform regulations apply to Mr. Thirkill. He has no available claim based on train speed. Accordingly, the court grants summary judgment on the claim based upon the speed of the train at the time of the incident made the basis of the lawsuit.

■ Additionally, Mr. Thirkill has claimed that the locomotive was an unsafe place in which to work because of the location of the independent brake valve. He has testified by deposition that he thinks he must have been thrown against the brake valve. Even were plaintiff's assumption true, the record is void of expert testimony or other evidence to the effect that there was a defect in the design of the locomotive cab and/or the location of the brake valve. Neither the plaintiff nor fellow crewmen are qualified to testify as design experts.

In *Rice v. Cincinnati, New Orleans & Pacific Railway Company,* 920 F.Supp. 732 (E.D.Ky.1996), an FELA action brought by a railway employee, the court held that the plaintiff's fellow trainmen "[did] not have the qualifications to offer expert testimony that the engine cab design [was] unsafe." 920 F.Supp. at 737. The court opined that a "new era" of scrutinizing expert testimony was introduced with the decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). 920 F.Supp. at 736–37. The court concluded the following:

These trainmen, although experienced on the railroad, do not have the expertise to offer reliable testimony on crossing design. To allow them to offer educated or uneducated guesses would be misleading to the jury rather than of assistance.

920 F.Supp. at 737–38. The same reasoning applies to their testimony concerning speed.

**4.** Federal Railroad Safety Act regulations adopted by the Secretary of Transportation found at 49 CFR § 213.9(a).

**5.** A 45 mile per hour speed restriction is in effect at the site because of a curve near the crossing. Mr. Thirkill himself has testified that the train was not exceeding the limit and was about five miles beneath the set limit.

**6.** Previously codified at 45 U.S.C.A. § 434.

**7.** State laws must not be incompatible with federal law. A state may enact safety measures when the regulation is necessary to eliminate or reduce an essentially local safety hazard and does not unreasonably burden interstate commerce.

■ Not only have plaintiffs offered no qualified expert testimony on the matter of cab design location of the brake valve, there is no evidence of negligence pertaining to its location. Thirkill does not even know if he hit the brake valve—he only knows he hit the console. As in the issue of train speed, "parts and appurtenances" of locomotives are governed by federal law. *See Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 612–13, 47 S.Ct. 207, 209–10, 71 L.Ed. 432, 439 (1926) (The Locomotive Boiler Inspection Act occupies the entire field of locomotive equipment regulation, preventing any state or local regulation on the same subject); *Southern Railway Company v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740, 743 (1936) ("Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute."); *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1152 (9th Cir.1982) (Considering both *Napier* and *Lunsford*, "under the Boiler Inspection Act the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority delegated to the [Secretary]' to prescribe the same part or attachment.").

Absent any evidence indicating the defendant negligently violated any federal statute pertaining to the location of the independent brake valve there is no fact issue before the court. There is a complete absence of proof the independent brake valve caused Thirkill's injuries. Norfolk is due summary judgment as a matter of law on any claim based upon the location of the independent brake valve.