Alexis ZAROW–SMITH, Widow of Craig D. Smith and Executrix of the Estate of Craig D. Smith, Plaintiff,

v.

**NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,**
Defendant.

Civ. No. 94–4946 (JAP).

United States District Court,
D. New Jersey.

Jan. 24, 1997.

Louis A. Ruprecht, Millburn, NJ, for defendant.

Lisa Washington, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for plaintiff.

## OPINION

PISANO, United States Magistrate Judge:

A civil jury trial was conducted before the undersigned in the above-captioned matter, commencing on October 29, 1996 and ending on November 8, 1996. At the conclusion of the presentation of the evidence and argument, the jury returned a verdict for plaintiff in the amount of $44,934.00. On December 3, 1996, judgment was entered in that amount.[1]

This Court is now asked to decide plaintiff's post-trial motion to alter and amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), and her motion for a new trial on damages or, in the alternative, for a new trial generally, pursuant to Federal Rule of Civil Procedure 59(a). Defendant filed opposition to plaintiff's motions, and the Court decides the matter without oral argument, pursuant to Federal Rule of Civil Procedure 78.

## BACKGROUND

This is a wrongful death case brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, ("F.E.L.A.") against New Jersey Transit Rail Operations ("N.J.T."). The decedent, Craig Smith, who died of lung cancer in August, 1995, was a bridge and building mechanic with N.J.T. A principal work place of the decedent was the Register Building in Red Bank, New Jersey, where he worked from 1986–1990. Evidence was offered at trial that asbestos was present in the Register Building during the years the decedent worked there.

The plaintiff, Alexis Zarow–Smith, the widow of Craig Smith, offered proof at trial that N.J.T. failed to maintain a reasonably safe workplace by permitting Craig Smith to be exposed to asbestos. Plaintiff's witnesses

---

1. The parties submitted to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c) and Local Rule 40.

testified that the roof of the Register Building was made of asbestos panels which released asbestos dust that fell on Craig Smith and other workers. Plaintiff's witnesses further testified that the railroad failed to inspect the building for asbestos, repair or abate the unsafe asbestos conditions, adequately warn the decedent, or provide protective devices and clothing. Proof was also offered that Craig Smith was required by the railroad to work in other locations containing asbestos and to do other work which exposed him to asbestos.

N.J.T. then offered proof that Craig Smith was negligent by smoking cigarettes and that his smoking was a proximate cause of his illness and death. N.J.T.'s position at trial was that the railroad provided Craig Smith with a reasonably safe place to work, the plaintiff failed to prove that Craig Smith was exposed to harmful levels of asbestos in the workplace, and she failed to prove that Craig Smith's lung cancer was caused by his asbestos exposure.

Craig Smith smoked between a half pack and a pack of cigarettes a day from the mid 1960's until 1993. He became ill in the late spring of 1994 and died in August of 1995 of inoperable lung cancer. He was 48 years old. Smith was survived by the plaintiff, their two-year-old daughter, and two adult children from previous marriages.

The jury returned a verdict for the plaintiff, finding that N.J.T. was negligent and that its negligence was a proximate cause of the illness and death of Craig Smith, but that Craig Smith, by smoking cigarettes, was also guilty of contributory negligence. The jury calculated plaintiff's total damages to be $898,665.00 [2], but then found that 95 percent of the cause of Craig Smith's illness and death was attributable to his cigarette smoking, reducing the total damages award to $44,934.00.

### FEDERAL EMPLOYER'S LIABILITY ACT

■ The jury found N.J.T. to be liable under the F.E.L.A. The pertinent provision of the law reads as follows:

Every common carrier by railroad while engaging in commerce between and of the several States or Territories ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in the case of the death of such employee, to his personal representative for the benefit of the surviving widow and children of such employee ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its appliances, machinery, roadbed, works, or other equipment.

45 U.S.C. § 51. Injury under the F.E.L.A. need not be the result of any specific occurrence but can consist of actions over a period of time including industrial or occupational disease or illness caused by exposure to a toxic substance. The claim is established if the plaintiff can show that negligence of the defendant played any part, however small, in the decedent's illness. *Mitchell v. Missouri–Kansas–Texas R. Co.*, 786 S.W.2d 659, 661 (Tex.), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990). *Isgett v. Seaboard Coast Line R. Co.*, 332 F.Supp. 1127 (D.C.S.C.1971).

### MOTION FOR A NEW TRIAL

#### Standard Under Rule 59(a)

■ Motions for new trials are governed by Federal Rule of Civil Procedure 59(a), which provides in pertinent part:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

F.R.C.P. 59(a). The most common reasons for granting a new trial are as follows: (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must

---

**2.** The jury valued the pecuniary loss to the plaintiff at $523,665.00 and the loss of guidance and counsel to the minor daughter at $375,000.00.

No award was made for pain and suffering or for lost household services.

be granted to prevent a miscarriage of justice, *Roebuck v. Drexel University,* 852 F.2d 715, 717 (3d Cir.1988); (2) when newly discovered evidence would be likely to alter the outcome of the trial, *Joseph v. Terminix International Co.,* 17 F.3d 1282, 1285 (7th Cir.1994); (3) when improper conduct by an attorney or the court unfairly influenced the verdict, *Wharf v. Burlington Northern,* 60 F.3d 631, 638 (9th Cir.1995); or (4) when the jury verdict was facially inconsistent, *Mosley v. Wilson,* 102 F.3d 85, 90 (3d Cir.1996). The purpose of this policy is to ensure that the trial court does not supplant the jury's verdict with its own. *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993) (citing *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir.) *(in banc), cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)). Whether or not a new trial is granted is left to the sound discretion of the trial court, whose decision is overturned only if the court abused that discretion. *Wagner by Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1017 (3d Cir.1995).

### Analysis

Plaintiff seeks a new trial on the following grounds: (1) the Court erred in instructing the jury to apportion damages; (2) the Court erred in instructing the jury that N.J.T.'s failure to perform a lateral chest x-ray during a 1993 company physical, and its failure to read the 1993 posterior-anterior ("p-a") chest x-ray correctly, were not negligence as a matter of law; and (3) the Court erred in failing to charge the jury that Craig Smith's assumption of the risk of smoking cigarettes was not available as a defense under the F.E.L.A.

### ● *Apportionment of damages*

Citing Prosser and Keeton's *Law of Torts* and the *Restatement (Second) of Torts,* the plaintiff first claims that the decedent's injury is indivisible and incapable of apportionment. This argument, however, ignores language in the F.E.L.A. that specifically allows apportionment. The statute provides that "the fact that an employee may have been guilty of contributory negligence shall not bar recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." 45 U.S.C. § 53.

The threshold issue thus becomes whether the decedent was "guilty of contributory negligence" because of his cigarette smoking so that it was proper for the jury to apportion damages under 45 U.S.C. § 53. Contributory negligence under the statute is "the doing of some act or an omission by the employee amounting to a want of ordinary care for his own safety, which is the proximate cause of his injury though concurrent with some negligent act of the employer." *Chesapeake & Ohio Ry. Co. v. Richardson,* 116 F.2d 860, 863 (6th Cir.), *cert. denied* 313 U.S. 574, 61 S.Ct. 961, 85 L.Ed. 1531 (1941). No reported F.E.L.A. case addresses whether an injured employee's smoking can be contributory negligence that permits apportionment of damages under the statute.

In a products liability context, however, cigarette smoking has been held to be negligent behavior. *Champagne v. Raybestos–Manhattan, Inc.,* 212 Conn. 509, 562 A.2d 1100, 1118 (1989) ("We conclude that there is no reason to prohibit the use of one's smoking history in determining comparative responsibility in this case involving asbestosis."). *Ingram v. Acands, Inc.,* 977 F.2d 1332, 1342 (9th Cir.1992) (finding that the evidence presented of the "synergistic effect of cigarette smoke and asbestos in increasing [plaintiff's] cancer risk" was sufficient to permit submitting the issue of comparative negligence to the jury). *In re Asbestos Litigation Pusey Trial Group,* 669 A.2d 108, 111–112 (Del.1995) (holding that it was error not to permit a jury instruction on the decedent's contributory negligence due to his cigarette smoking). *Hao v. Owens–Illinois, Inc.,* 69 Haw. 231, 738 P.2d 416, 418 (1987). *Jones v. Owens–Corning Fiberglas Corp.,* 69 F.3d 712, 720 n. 9 (4th Cir.1995) (concluding that the defense of contributory negligence is "clearly" available when the defendant can demonstrate that the decedent had been

warned about the synergistic effects of asbestos exposure and cigarette smoking).[3]

■ This Court finds the logic of these cases to be persuasive and concludes that smoking can constitute negligence in a F.E.L.A. case. Thus, whether a jury instruction on contributory negligence should be given depends on the evidence presented at trial. Here, expert testimony on behalf of both plaintiff and defendant and videotaped deposition testimony of the decedent put the fact question of Craig Smith's contributory negligence properly before the jury. For example, Dr. Segall, the decedent's treating physician, testified as follows:

Q Doctor, do you have an opinion, based on reasonable medical certainty, as to the cause or causes of the adenocarcinoma which you found?

A Yes.

Q And would you tell the Court and the Jury what your opinion is?

A I've got that the cause of cancer in the lung had multiple causes. Some of it may have been genetic, some of it was related to his moderate cigarette smoking, and in part, and to a great deal, it was due to the exposure to asbestos. So it was multifactorial: heredity, smoking, and the toxic substance, asbestos.

. . . . .

In 1985, the United Nations World Health Organization published a paper by the International Agency for Research in Cancer. They studied smokers and non-smokers related to asbestos and non-asbestos. What they found was if a person didn't smoke and they didn't work with asbestos, the incidence of lung cancer was 11 per hundred thousand. That gave them what they call a ratio of one. If a person didn't smoke but worked with asbestos, then the incidence was 58 instead of 11. If they smoked but didn't work with asbestos, the incidence was 122. But if, as in Mr. Smith's case, they were smoking and exposed to asbestos, the score went to 600. So instead of having a score of 11, the score was 600. The chances of dying, what they call the mortality ratio, went from 1 to 53. So in other words, his chances of dying were 50 times increased because he smoked and worked with asbestos. If he had smoked alone, and had no asbestos exposure, instead of the score being 53, it would be 11. So, in other words, the asbestos exposure increased the chances of his dying from cancer by five-fold.

(Segall Direct Testimony at 114, 116–117.) A defense expert, Dr. Karetzky, disputed the testimony given by Dr. Segall:

Q Have studies been done to determine whether or not lung cancer caused by asbestos can come about with only a very brief period of exposure to asbestos?

A Yes.

Q What have those studies shown, Doctor?

A Almost invariably you always have a latency period from the initial time of exposure of at least 20 years, more often as much as 30 to 50 years.

Q And have these been well documented studies by people who have specialized in doing studies of asbestos workers?

A Yes.

Q Has there ever been a suggestion that a person could be employed, such as Mr. Smith in 1986, have some asbestos exposure, and then develop asbestos-caused lung cancer within seven years?

A No.

. . . . .

Q You reviewed some slides—or excuse me—you reviewed a report of Dr. Solitare who looked at slides of this patient. Is that correct?

A Yes.

Q And were they slides of the biopsy that Dr. Segall took?

A Yes.

Q Was there any indication from those slides that there was asbestosis microscopically?

---

3. Certain language in *Jones* could be read to imply that the defense of contributory negligence is unavailable when no evidence was presented at trial that the decedent was warned about the synergistic effects of asbestos exposure and smoking. However, the defense was permitted in *Jones* even though no such warning was given. *Jones*, 69 F.3d at 722–723 (dissent).

A No.

Q Based upon the length of time Mr. Smith worked for the railroad, the absence of any asbestos-related disease shown by x-ray, pathology, or clinical findings, the absence of any asbestos bodies in any of the pathology slides, do you have an opinion as to whether or not asbestos played any role in his lung cancer?

A I do.

Q And what is that opinion?

A It played absolutely no role.

Q Based upon the fact that this man was a smoker with a smoking history of 25 or 30 pack years, do you have an opinion as to whether or not smoking likely had a relationship to his cancer?

A I do.

Q And what is that?

A His cancer was caused by cigarette smoking.

(Karetzky Direct Testimony at 40–44.) Finally, Craig Smith had testified at his videotaped deposition, which was played to the jury at trial, as follows:

Q And you had smoked cigarettes from the 1960's until 1993?

A Off and on.

Q And at the rate of up to one pack of cigarettes per day?

A At the very most.

Q And during the period of time that you were smoking, you observed warnings on cigarette packages?

A Yes.

Q And the warnings concerned health hazards from the risks of smoking?

A Yes.

Q And are you aware that one of the health hazards linked to smoking is the increased risk of lung cancer among smokers?

A Yes.

Q Do you believe that cigarette smoking has caused your cancer?

A No.

(Smith Video Deposition at 86–87.)

Based upon this testimony, the Court determined to submit the fact question of decedent's contributory negligence to the jury. The jury was instructed as follows:

The statute provides that "the fact that an employee may have been guilty of contributory negligence shall not bar recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

The railroad contends that Craig Smith was negligent by smoking cigarettes and that such negligence was a proximate cause of his illness and death. The railroad bears the burden of proving that Craig Smith was negligent and that such negligence was a proximate cause of Craig Smith's own damage.

In determining whether Craig Smith exercised reasonable care, you will consider whether he ought to have foreseen, under the circumstances, that the natural and probable consequence of his conduct would have caused an illness.

If an ordinary person, under similar circumstances and by the use of ordinary care could have foreseen the result (i.e. that some injury, illness, or damage would probably result) and either would not have acted or would have taken precaution to avoid the result, then the performance of the act or the failure to take such precautions would constitute negligence.

If you find that both the railroad and Craig Smith were negligent, and that their respective negligence was a proximate cause, then the plaintiff will not be barred from recovery, but her recovery will be reduced. To determine the amount of the reduction, you must compare the negligent conduct of the railroad and Craig Smith in terms of percentages. You will attribute to each of them that percentage that you find describes or measures that party's negligent contribution to the happening of the accident. The percentages must add up to 100%.

The jury answered questions on the verdict sheet as follows:

1. Has plaintiff proven by a preponderance of the evidence that the defendant was negligent?

$$\frac{X}{\text{Yes}} \qquad \frac{}{\text{No}}$$

2. If yes, was the negligence of the defendant a proximate cause of Craig Smith's illness and death?

$$\frac{X}{\text{Yes}} \qquad \frac{}{\text{No}}$$

4. Has defendant proven by a preponderance of the evidence that Craig Smith, by smoking cigarettes, was guilty of contributory negligence?

$$\frac{X}{\text{Yes}} \qquad \frac{}{\text{No}}$$

If yes, was his contributory negligence a proximate cause of his illness and death?

$$\frac{X}{\text{Yes}} \qquad \frac{}{\text{No}}$$

5. If yes, what proportion of the cause of his illness and death is attributable to his cigarette smoking?

$$\underline{95\%}$$

The jury decided the factual issues in the case. As the record contains evidence that would reasonably support that determination, it will not be overturned. *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289–290 (3d Cir.1993).

▋ In the alternative, plaintiff argues that the defendant has the burden of establishing that apportionment is proper and, because it did not present testimony by a physician giving a reasonable basis for a numerical apportionment, it did not meet its burden. Plaintiff principally relies on two cases, *Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 528 A.2d 947 (1987), and *Terry v. Consolidated Rail Corporation*, an unreported New Jersey Superior Court case decided by the Appellate Division in June of 1996. *Martin* was a products liability case in which expert witnesses testified that apportionment of liability for plaintiff's damages was impossible. Following this testimony, the Pennsylvania Supreme Court concluded that the jury should not have been given an instruction on apportionment because "there was no evidence presented at trial upon which the trial court could properly submit the issue of apportionment to the jury." *Martin*, 528 A.2d at 948.

In *Terry*, although the defendants pled contributory negligence as a defense, they did not present any evidence to support the defense or request that the defense be submitted to the jury, and the Appellate Division considered them to have abandoned the defense. *Terry* at 15–16, n. 2. *Terry* holds that, absent a finding of comparative negligence, when there is even a partial causal connection between the employer's negligence and the employee's injury, an apportionment of damages is inappropriate unless the employee had suffered a separately identifiable injury. *Terry* at 15–16. In the instant case, however, comparative liability was alleged, and the jury did hear evidence providing a basis to determine the relative amounts of fault of the defendant and decedent. Thus, *Martin* and *Terry* are not instructive.

Moreover, *Terry* was explicitly rejected in another unreported state court F.E.L.A. case decided on December 19, 1996, in which the Appellate Division concluded that apportionment is appropriate when there was evidence at trial "from both plaintiff's medical expert and defendant's medical expert acknowledging that plaintiff's cigarette smoking over the years was a contributing cause of his ultimate disability." *Murphy v. Port Authority of New York and New Jersey*, at 8.

Plaintiff also cites *Farmer v. Pennsylvania Railroad Company*, 311 F.Supp. 1074 (W.D.Pa.1970), another F.E.L.A. case, in which the court affirmed the trial court's refusal to submit the issue of contributory negligence to the jury. Again, however, there was no contributory negligence in the case as presented to the jury. Contributory negligence was not mentioned as an issue in the defendant's pretrial narrative statements or in the transcript of the pretrial conference. Although the defendant pleaded contributory negligence in its answer, at the end of the trial defense counsel agreed with the court's opinion that there was no contributo-

ry negligence in the case. *Farmer,* 311 F.Supp. at 1077.

While in *Farmer* there was no factual basis for the jury to be given an apportionment of damages charge, expert testimony in the instant case did provide such a basis. Plaintiff appears to argue that, unless expert witness testimony provides a specific percentage of fault attributable to the defendant that is similar to the percentage of fault arrived at by the jury, apportionment of damages is impermissible. The Court's research has not led to a case standing for such a proposition.

Finally, the Court draws the attention of the parties to *Paul v. Missouri Pacific Railroad Company,* an Eighth Circuit F.E.L.A. case directly on point. In *Paul,* the plaintiff was an avid hunter who had used small and large caliber rifles over the course of 20 years without always wearing hearing protection. His injury was some high-frequency hearing loss and a persistent ringing in one ear. At trial, the railroad sought to prove that plaintiff's injury was caused solely by his recreational use of firearms, and the trial court gave a jury charge on contributory negligence. The Circuit's rationale for upholding this instruction is equally applicable in the instant case:

> Congress provided, through the contributory negligence defense set forth in 45 U.S.C. § 53, the only means for an employer to avoid liability for the full amount of an employee's damages where its negligence caused only a part of the injury. Because the injury in the ordinary F.E.L.A. case is the product of a sudden and isolated event, the contributory negligence defense usually has been seen in terms of whether the plaintiff's unreasonable behavior contributed to creating this event. In the present case, however, where the injury arises from the defendant's long-term disregard for an interest of the plaintiff (here, his hearing), we see no reason why the defense of contributory negligence should not have application where there is evidence the plaintiff like-

wise has shown long-term disregard for the same interest.

> *Paul v. Missouri Pacific Railroad Company,* 963 F.2d 1058, 1060 (8th Cir.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992).

This rationale comports with basic hornbook torts law. *See* Prosser & Keaton, *Law of Torts,* § 52 at 345 (1984) (noting that where there is a factual basis for apportionment of damages, which limits the defendant's liability to that part of the harm of which the defendant's conduct has been a cause in fact, apportionment is likely to be made). Where such a factual basis exists, it is preferable in the interest of fairness to permit some rough apportionment of damages rather than to hold the defendant entirely liable for a harm that was inflicted by several causes. *Dafler v. Raymark Industries,* 259 N.J.Super. 17, 31, 611 A.2d 136 (App.Div.1992), *aff'd,* 132 N.J. 96, 622 A.2d 1305 (1993). Therefore, it was appropriate to give a jury charge on the apportionment of damages due to decedent's comparative negligence.

### ❸ *Chest x-rays*

 During company physicals, N.J.T. took chest x-rays of Craig Smith in 1992 and during the summer of 1993. In both cases only a posterior-anterior ("p-a") chest x-ray was taken. Plaintiff alleges that the railroad was negligent because of its failure in 1993 to take a lateral chest x-ray and to read Smith's p-a chest x-ray correctly. Plaintiff's theory is that if these procedures had been performed, Smith's cancer could have been discovered earlier, giving him a fighting chance for survival.[4] No negligence is alleged with regard to the 1992 x-ray.

Plaintiff asserts that the failure of the N.J.T. doctors to take a lateral x-ray constituted negligence, and that their negligence should be imputed to the railroad under basic principles of agency. Counsel for plaintiff declined to couch the argument as a medical malpractice claim. Regardless of its characterization, however, since the allegation of negligence is directed toward a physician, the

---

4. This, of course, is speculative and may have been excluded under Federal Rule of Evidence 403. Because of the Court's ruling to preclude

the claim on other grounds, however, the issue need not be addressed.

plaintiff bears the burden of establishing the elements of a professional malpractice claim, i.e., that the practice of medicine "imposes upon [the doctor] the duty to exercise in the treatment of his patient the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in [the] field. Failure to have and to use such skill and care toward the patient as a result of which injury or damage results constitutes negligence." *Schueler v. Strelinger,* 43 N.J. 330, 344, 204 A.2d 577 (1964). The plaintiff bears the burden of establishing the doctor's deviation from the standard. *Schueler,* 43 N.J. at 345, 204 A.2d 577.

On direct examination, Dr. Segall testified that N.J.T. should have taken a lateral x-ray in 1993. This testimony was in response to a hypothetical question that assumed Smith had complained of a persistent cough to N.J.T. medical personnel. (Segall Direct Testimony at 100.) However, on cross-examination Dr. Segall was presented with Smith's N.J.T. medical records from 1993, in which he denied knowing of any asbestos exposure, denied having a cough, shortness of breath, or chest pain, and minimized his smoking history. After reading Smith's statements on his medical records, Dr. Segall equivocated on his opinion that N.J.T. should have taken a lateral x-ray in 1993. (Segall Cross–Examination at 134.) Thus, the assumptions in the hypothetical question were not supported by the evidence, and it was proper to withhold the issue from the jury.

Even if plaintiff had succeeded in putting evidence before the jury on this issue, she still failed to establish the relevant standard of care. No question was ever asked of Dr. Segall or plaintiff's other medical expert, Dr. Shubin, whether taking only a p-a view in 1993 was a deviation from any medical standard of care. Instead, both doctors merely expressed their opinion that if Smith was known by the railroad to be exposed to asbestos and was complaining of a cough, a lateral view would also be required.

Plaintiff's evidence regarding the lack of a lateral x-ray does not make out a case for professional negligence. The only proof presented was in the form of an answer to a hypothetical question, with assumptions which were later proven to be unfounded. The plaintiff never established the applicable standard of care or any violation of the standard, the essential elements of a medical malpractice claim. Testimony elicited from Dr. Segall and Dr. Shubin fell short of establishing these elements. Thus, the claim was inappropriate for consideration by the jury.

● *Assumption of the risk*

The F.E.L.A. bars railroads from relying upon the defense of assumption of the risk. The law specifically states that, when an employee is injured due to the railroad's negligence, he "shall not be held to have assumed the risks of his employment." 45 U.S.C. § 54. By its very terms, this language is restricted to the employee's assumption of the risks of employment. Thus, the employer may not argue that the employee "implicitly consented to the risk by accepting employment with the railroad or by performing a task in the manner the employer directed." *Fashauer v. New Jersey Transit Rail Operations,* 57 F.3d 1269, 1280 (3d Cir. 1995). This provision in the statute does not apply when an employee has assumed a risk from non-employment related activities such as cigarette smoking. Accordingly, plaintiff's argument that she should not be penalized for the decedent's assumption of the risk of cigarette smoking is without merit.

### MOTION FOR A NEW TRIAL ON DAMAGES

#### Standard Under Rule 59(a)

Federal Rule of Civil Procedure 59(a) also governs plaintiff's motion for a new trial on damages. Such a motion will be granted when the amount of the verdict is so unreasonable as to be entirely disproportionate to the plaintiff's injury. *Eiland v. Westinghouse Electric Corp.,* 58 F.3d 176, 183 (5th Cir.1995). *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1100 (3d Cir. 1995). If the verdict is excessive, the court may offer the verdict winner a remittitur in exchange for denial of the motion for a new trial, but if the verdict is inadequate, the court may not offer an additur and is limited to the option of ordering a new trial. *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79

L.Ed. 603 (1935) (holding that additur violates the Constitution's Seventh Amendment right to a jury verdict).

### Analysis

Plaintiff's grounds for seeking a new trial on damages are that the jury's zero verdicts for Craig Smith's pain and suffering and for the monetary value of his services, care and assistance to the plaintiff were contrary to the law and contrary to the weight of the evidence.

● *Decedent's pain and suffering*

Plaintiff draws the Court's attention to a number of cases where the jury found liability by the defendant but did not award damages for pain and suffering, after which the court ordered a new trial on damages only. *See Levesque v. Marine Drilling Co.,* 783 F.Supp. 302 (E.D.Tex.1992) (where seaman was injured while obeying the orders of a superior); *Davis v. Becker & Associates, Inc.,* 608 F.2d 621 (5th Cir.1979) (finding that jury's award of zero pain and suffering damages could not be reconciled with its award of four years lost wages for plaintiff's 1975 accident, when nothing in the trial record supported defendant's theory that all of plaintiff's pain and suffering was due to an earlier, noncompensable accident); *Pagan v. Shoney's, Inc.,* 931 F.2d 334 (5th Cir.1991) (finding that the failure to award general damages for pain and suffering was error under Louisiana state law when the jury had awarded damages for loss of earnings and medical expenses).

It is undeniable that a large number of cases stand for the proposition that, when the jury fails to make an award for pain and suffering, the court *may* order a new trial on damages. However, the court is under no obligation to do so. *Manes v. Metro–North Commuter R.R.,* 801 F.Supp. 954 (D.Conn.) ("While the awarding of past and future lost earnings and medical expenses without a finding of damages for pain and suffering is unusual, it is not necessarily an inconsistency that as a matter of law, let alone error would require this court to grant ... a new trial."). Rather, if there is an apparent inconsistency in a jury verdict, the trial judge is obligated to uphold it if there is any way to justify it.

*Palmer v. City of Monticello,* 31 F.3d 1499, 1505 (10th Cir.1994). Here one explanation is that the jury simply declined to make an additional award for pain and suffering beyond the $898,665.00 in damages it awarded for the pecuniary loss to the plaintiff and the loss of guidance and counsel to the minor daughter. Because this explanation is reasonable and the verdict is not so inadequate as to be entirely disproportionate to the plaintiff's injury, a new trial is not warranted on this theory.

❷ *Decedent's services, care and assistance to the plaintiff*

Plaintiff also cites cases in which, when liability by the defendant was found but no damages were awarded for the value of the decedent's care and services, a new trial was ordered on damages only. *See Grant v. Williams,* 190 So.2d 23 (Fla.App. 1966) (emphasizing the discretion given to the trial judge in affirming his decision to order a new trial); *Hogue v. Wilson,* 51 A.D.2d 424, 381 N.Y.S.2d 921 (1976) (finding plaintiff's recovery for permanent personal injury to be so inadequate as to warrant a new trial on damages when her recovery was less than her medical expenses); *Ford Motor Company v. McDavid,* 259 F.2d 261 (4th Cir.), *cert. denied* 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958) (finding evidence insufficient to support jury's verdict against the defendant auto manufacturer which did not have custody and control over car when it was altered at dealership). A review of each of these cases indicates that the motion for new trial on damages was granted based on individual fact issues, and was upheld because of the broad discretion given to the trial judge to grant or deny such motions. Accordingly, these cases need not be followed by this Court.

Once again, the trial judge is obligated to uphold the jury's verdict if possible. *Palmer,* 31 F.3d at 1505. Here, the factual evidence that Smith provided and would have continued to provide compensable services to the plaintiff was not compelling, and the Court would be remiss if it were to disturb the jury's decision on this issue.

## MOTION TO ALTER AND AMEND THE JUDGMENT

### Standard Under Rule 59(e)

Motions to alter and amend the judgment are allowed by Federal Rule of Civil Procedure 59(e). The Court may alter and amend a judgment: (1) when there has been an intervening change in the law; (2) when new evidence becomes available after trial; (3) if the court has committed clear legal error; or (4) if the judgment without amendment would create a manifest injustice. *North River Insurance Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

### Analysis

Plaintiff moves to amend the judgment to the amount of the jury's full assessment of damages, $898,655.00, without any reduction for contributory negligence. She argues that this amendment is necessary because no contributory negligence charge should have been given and the jury should not have been permitted to apportion damages. As discussed above, however, the charge and the apportionment were proper; therefore, no amendment of the judgment is warranted.

### CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motions. An appropriate order follows.

### ORDER

Presently before the Court are plaintiff's post-trial motion to alter and amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), and her motion for a new trial on damages or, in the alternative, for a new trial generally, pursuant to Federal Rule of Civil Procedure 59(a). Defendant filed opposition to plaintiff's motions, and the Court decides the matter without oral argument, pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth in the accompanying Opinion,

**IT IS,** on this 23rd of January, 1997,

**ORDERED** that plaintiff's motion to alter and amend the judgment is **DENIED;** and it is further

**ORDERED** that plaintiff's motion for a new trial is **DENIED;** and it is further

**ORDERED** that plaintiff's motion for a new trial on damages is **DENIED.**